## Morris v. City Transfer & Yellow Taxi Company.

(Decided May 24, 1927.)

### Appeal from Daviess Circuit Court.

1. **Evidence.**—In action against taxi company for personal injuries sustained when cab turned over, testimony that witness "just concluded from the amount of whisky and from the way it smelled that the whole bunch was drunk" held inadmissible.

2. **Evidence.**—In action against taxi company for personal injuries sustained when cab turned over, testimony as to what another than

plaintiff did after accident held inadmissible; plaintiff being un-conscious at time.

3.  Carriers.—In action against taxi company for personal injuries sustained when cab turned over, in which defendant contended plaintiff was not passenger, evidence as to what took place between plaintiff, driver, and others who were with them before ride started, held admissible.

4.  Carriers.—Where one takes joy ride in taxicab, without intention to pay or be charged therefor, ride being given by driver for hospitality he had received, relation of carrier and "passenger" did not exist.

5.  Carriers.—In action against taxi company for personal injuries sustained when cab turned over, instruction placing obligation on plaintiff to exercise care to learn whether driver was sober or intoxicated held erroneous, since such duty did not exist if relation of carrier and passenger existed.

BARNES, SMITH & KIRTLEY for appellant.

SANDIDGE & SANDIDGE for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

John Morris brought this suit against the City Transfer & Yellow Taxi Company of Owensboro, which is a corporation operating motor vehicles in Owensboro as a common carrier. He alleged in his petition that, while he was a passenger in one of the defendant's vehicles, it was turned over and he was thrown violently to the street, breaking his hip and otherwise greatly injuring him, to his damage in the sum of $5,475. The defendant by its answer controverted the allegations of the petition and denied that the plaintiff was a passenger on the car or that the relation of carrier and passenger in any way existed between him and it at the time of his injury. The jury returned a verdict for the defendant; the plaintiff appeals.

The proof by the plaintiff showed these facts: He is a negro, 53 years old; lives in Louisiana. He was the chief cook of the Wise Carnival, which held a show in Owensboro in April 1925. The show closed at midnight on Saturday. They then began packing up to go to the next appointment. As chief cook, Morris had charge of the packing up of the cooking quarters and utensils. He got these packed in several hours, and after they were packed shipped them on trucks to the railroad station. He then got in the taxi of the defendant; paid the fare to the railroad station to see that the goods were properly

loaded on the cars. After he got to the railroad station and saw to the loading of the goods, he got in the taxi again, paid the usual fare, and told the driver to take him to a boarding house. As they were going to the boarding house, in making a turn at a street corner, the vehicle turned over, caught Morris under it, breaking his thigh, and rendering him for a time unconsecious.

On the other hand, the proof of the company is, in substance, that, when the driver of the taxi went out to the carnival grounds, a number of negroes were shooting craps and drinking. They invited him to join the game and gave him whisky. After staying there for a while they all got in the car and went down to Fifth and Elm. Morris was along, and was drinking too and directing where people should sit, drawing a pistol on a man who did not sit where he told him. At Fifth and Elm one of them went in, and the car turned around and they all came back to the carnival grounds. A little later they all got in the car and went down to the station. After staying there about 15 minutes, they all got in the car again and started back up town. After going a few squares the car turned over. A witness who went to the scene of the wreck thus stated what he saw when the ambulance came up a few minutes later:

> "Yes; and they got in there, and then I turned around and looked and there was a number of bottles—I don't know how many, but there was a number of them lying there on the ground; some of them were broken, and the smell of whisky was so strong that I got away from it, and afterwards two policemen came and picked up two or three of the bottles. I don't know whether they had any whisky in them or not; if they did it was white whiskey and I couldn't tell [and I just concluded from the amount of whisky and from the way it smelled that the whole bunch was drunk, and, after they got the cab tilted up, that white man got up and screamed like he was crazy, but I don't think there was anything the matter with him.]"

The plaintiff objected to the words placed in brackets. This objection should have been sustained, and these words should not have been read to the jury, for the witness' opinion on the facts is incompetent. Appellant was lying there insensible and said nothing.

The plaintiff also objected to all the evidence as to what took place before they went to the depot. But the pivotal question in the case is, was the plaintiff in the car as a passenger at the time he was injured? The defense of the company rests upon the ground that the driver of the taxi, Payne, was simply giving these negroes a joy ride in return for the favors he had received at their hands, and was not serving the company in any way in what he did. For the jury to determine intelligently the relation between the parties at the time plaintiff was hurt, it was proper for the jury to hear what had taken place between them since they had gotten together about 3 o'clock that morning, for the proof for the defendant tends to show that it was a continuous transaction, and that there was no change of relation after its beginning. Payne, as the driver of the car, had the right to admit passengers and to collect fares. Morris says he paid Payne his fare and was a passenger. On the other hand, there are circumstances tending strongly to show that Payne was not serving his company at all, and was simply giving these negroes and another negro he had with him a joy ride as his guests. If the plaintiff at the time of his injury was riding in the car, not as a passenger, but was simply taking a joy ride, which the driver, Payne, was giving him in return for the hospitality he had received, without any expectation on Payne's part to be paid and without any expectation on appellant's part to pay or be charged therefor, then the relation of carrier and passenger did not exist. The evidence objected to was properly admitted as bearing on this question, and the objections to the evidence were properly overruled.

"One who is accepted for transportation as a passenger without any compensation to be rendered is nevertheless entitled to all the care and protection which the carrier is under obligation to furnish to paying passengers. However, such acceptance must be by an officer or agent having the proper authority to do so; and, where one enters a train or car without any intention of paying fare, but under a collusive agreement with the conductor or some other employee to ride free in violation of the rules of the company, he does not become a passenger." 10 C. J. p. 635.

Appellant was in the car under a collusive agreement with the driver, if he was giving them a joy ride free of charge. The court gave the jury, among others, this instruction:

"(4) If the jury believe from the evidence that the driver of the taxicab was intoxicated at the time he started on the drive which ended in the accident complained of, and you further believe from the evidence that the intoxicated condition of the taxicab driver was known to the plaintiff or that he had opportunity of knowing it before he entered the taxicab and that plaintiff voluntarily entered the taxicab and permitted himself to be driven about the streets by the taxicab driver while he was so intoxicated, if he was intoxicated, then in that case the plaintiff did not exercise ordinary care for his own safety, and was guilty of negligence which directly contributed to his own injury, and, if you so believe, the jury will find for the defendant."

This instruction should not have been given. If the relation of carrier and passenger existed, the passenger was under no obligation to exercise care to learn if the driver of the car was sober or intoxicated. There was no evidence that Payne was so intoxicated as to be unfit to drive the car, and no facts were proved showing that Morris knew this. No instruction on this subject should have been given. But, in lieu of No. 4, the court should have instructed the jury as above indicated, telling the jury when the relation of carrier and passenger did not exist.

In the second sentence of instruction No. 1 the court on another trial will insert the words, "while being carried as a passenger," in lieu of the words, "while exercising ordinary care for his own safety." The fifth instruction will be omitted. There is no evidence that Morris did anything or omitted to do anything but for which he would not have been injured, if the relation of carrier and passenger existed. See notes 31 A. L. R. pp. 1208, 1209.

Judgment reversed, and cause remanded for a new trial.