## SUSAN RAU v. FRANK SMUDA AND OTHERS.[1]

September 28, 1928.

No. 26,717.

**Questions for jury—error in charge concerning contributory negligence.**
Plaintiff was injured while riding in appellant's taxicab driven by defendant Smuda. In this action for damages she recovered a verdict. It is *held*:

1. Whether Smuda had departed from the scope of his employment when plaintiff was injured was for the jury.

2. So also were the issues of assumption of risk, contributory negligence, and the defense of a joint adventure wherein plaintiff and her companions made use of appellant's cab without her knowledge or consent.

3. It was error to charge the jury that plaintiff could not be guilty of contributory negligence if she did not know that Smuda "was drunk and unable to move or control that car." If plaintiff knew that Smuda was under the influence of liquor to such an extent as to render him incapable of safely and prudently driving the cab, she was guilty of contributory negligence, the evidence clearly showing that the accident could be ascribed to no other cause than Smuda's inability to drive safely because of his intoxication.

Carriers, 10 C. J. p. 1066 n. 72; p. 1070 n. 96; p. 1098 n. 46; p. 1155 n. 57; p. 1156 n. 64.

---

See note in 22 A. L. R. 1397; 45 A. L. R. 477; 50 A. L. R. 1450; 2 R. C. L. 1198; 1 R. C. L. Supp. 733; 5 R. C. L. Supp. 138; 7 R. C. L. Supp. 65.

Action in the district court for Stearns county to recover for personal injuries caused by the negligence of defendant Frank Smuda, a taxicab driver employed by the defendant Mrs. Joseph D. Siegel. There was a verdict of $3,000 for the plaintiff, and the defendant last named appealed from an order, Roeser, J. denying her alternative motion for judgment or a new trial. Reversed and new trial granted.

*R. B. Brower,* for appellant.

*Tautges, Wilder & McDonald* and *Donohue & Quigley,* for respondent.

[1]Reported in 221 N. W. 232.

HOLT, J.

From an order denying appellant's motion in the alternative for judgment non obstante or a new trial, she appeals.

Appellant was conducting a small taxicab business in St. Cloud, Minnesota, on November 12, 1926, when plaintiff, riding in one of her cabs, was injured in a collision alleged to have been caused by the negligence of the driver of the cab, defendant Smuda. Appellant's defenses were that the driver had departed from the scope of his employment; that plaintiff and the other parties in the cab were engaged in a joint pleasure adventure wherein they made use of the cab without appellant's knowledge or consent; that plaintiff and her companions, including Smuda, were on a frolic where intoxicants had been consumed and were being unlawfully transported in the cab; and that plaintiff was negligent and assumed the risk knowing the intoxicated condition of the driver. Plaintiff had a verdict of $3,000 against Smuda and appellant.

One of the main contentions of appellant is that she was entitled to a directed verdict as requested and should now have judgment non obstante. Smuda was one of five drivers. The drivers were not on a salary but received a commission of 30 per cent of the fares taken in by the cab they drove. The drivers took their turn as the calls for cabs came and checked out and in from the office. Sometimes, when answering a call, another fare might be picked up, and the drivers might so do before returning to the office and checking in. The time was noted when checking out as well as the destination, and thus track could be kept of whether or not the driver was attending to his duties and accounting for the fares collected. Smuda was acquainted with one Bidinger, a young man who lived across the street from plaintiff. Smuda called Bidinger on the telephone in plaintiff's home, and plaintiff, a young woman of 18, went over to notify Bidinger of the call. The latter came over and had a telephone conversation with Smuda about a party that evening. This was near six o'clock p. m. November 12, 1926. About 7:30 Bidinger, from plaintiff's home, telephoned to appellant's office for a cab. Smuda answered. Whether this was prearranged

in the first talk does not appear. Shortly thereafter Engelhart, Condon and Erickson, young men, tapped on the window of appellant's office. Smuda, who was inside, came out. Without checking out, he took the cab parked outside the office, the three young men entered, and Smuda drove off with them. Miss Malikowski was then procured as Engelhart's companion, and thereafter Miss Reveling was obtained as Smuda's. Smuda then drove to the home of Engelhart's sister, where Engelhart lived alone, the other occupants being away. All entered the home except Smuda and Miss Reveling. The two latter then drove to plaintiff's home, ostensibly in response to the previous telephone message, to take Bidinger and plaintiff down town to a show. On the way Smuda thought he had a flat tire and called up the office to send out a tire. Tulley, the manager, sent a tire by another cab driven by one Rieder. It turned out that the tire was not flat, but was sunk somewhat in the sand. This occasioned some delay, and Smuda and Bidinger determined to go to Engelhart's home, as it was then too late for the show. Plaintiff acquiesced. When they arrived at Engelhart's home two more girls had been procured, so with Smuda, Bidinger and their companions there was a party of five couples. They amused themselves by playing the phonograph, the girls dancing and the men singing. The latter however became boisterous as a keg of home-made wine and a bottle of moonshine began to show their potency. The host, Engelhart, became oblivious to his surroundings by 10:30 and was put to sleep in a baby crib. A few minutes before midnight another cab was ordered from appellant's office by Condon. Rieder was sent out, and Condon, Erickson and two girls entered his cab. Condon advised plaintiff to ride with them, presumably because he deemed it unsafe to ride with Smuda in his then condition. However plaintiff, Bidinger and Miss Reveling got in Smuda's cab. Some eight blocks from Engelhart's home, on a wide paved street, as Smuda attempted to pass Rieder's cab, he struck the rear left side thereof, causing the rear of Smuda's cab to skid to the left, its left front striking a meeting car, driven by one Weber, head on. The force of the blow tipped Smuda's cab on its side, the top towards the Weber car. Passengers in both

vehicles received various injuries. A bottle of wine was found in Smuda's cab, and a broken whisky bottle near it. Smuda pleaded guilty to driving an automobile while intoxicated. This and other lawsuits resulted from the collision.

It may well be that Bidinger and Smuda by the telephone communication about supper-time arranged for the party at Engelhart's; that the subsequent call for a cab to take plaintiff to the show was a ruse to obtain the consent of plaintiff's mother to plaintiff's going out, and the flat tire a pretense to kill time so as to make it too late for the show, thus more readily inducing plaintiff to go to the party instead. But even so, there is enough, in our opinion, to carry plaintiff's case to the jury on the proposition that she was a passenger in a taxicab operated by a servant of defendant in her interest. From her home plaintiff heard her escort telephone to appellant's place of business for a cab. Smuda within a short time appeared with it. Had the accident occurred just after plaintiff entered on the way to the show, there could have been no question of appellant's liability. To a young and inexperienced woman it may not have appeared that a cab driver was departing from the scope of his employment by parking his cab and becoming one of a party for two or three hours at an evening frolic. There was evidence from which the jury could infer that Smuda was engaged in the business of appellant while at the party. Although he had not checked out, Tulley, appellant's manager, sent a spare tire to him. At 10:30 Smuda communicated with Tulley. While the latter disapproved of the cab's being out, there was no direct order to bring it at once to the office. Smuda's testimony in regard to splitting the price with Bidinger for the time the cab was out, and Bidinger's that he agreed to pay $5 to $6 for the use of the cab to take them from Engelhart's to the restaurant and thence home, together with some evidence that the drivers had authority to pick up fares when out on calls, would seem to leave it for the jury to determine whether Tulley did not recognize that Smuda was still using the cab in appellant's business although he had gone with it upon a mission contrary to previous orders.

Tulley testified that five days before this Smuda had taken the cab for use at a party where he had become intoxicated and had driven recklessly in consequence; that he then told Smuda that he was discharged, but permitted him to remain to the end of the week, the 12th being the last day, so that he could earn enough to square up; and that he was so allowed to remain on the express condition that he should attend no party unless he left the cab in the garage. Yet when informed that Smuda was at a party with the cab at 10:30 the night in question, no steps were taken to get the cab back; nor an hour later, when Tulley sent Rieder to Engelhart's, did he give any orders to Smuda not to drive the cab; nor were others of the party cautioned in respect thereto. Smuda's testimony was that when he called Tulley at 10:30 telling him he was at a party, Tulley answered "All right." The jury could also find from the evidence that drivers did at times use the cab on other than a local trip, and when returning would account for the time instead of for a single fare; that Smuda and Bidinger were to split the amount due for the time the cab was kept for the use of themselves and their lady friends. In our opinion, the evidence made the question for the jury whether appellant's manager, with full knowledge of Smuda's departure from his usual course of employment, sanctioned what he was engaged in. None of the authorities cited by either side seem to be of much aid. A number are collected in Fisher v. Fletcher, 191 Ind. 529, 133 N. E. 834, 22 A. L. R. 1397, and Fletcher v. Meredith, 148 Md. 580, 129 A. 795, 45 A. L. R. 477.

Neither plaintiff's contributory negligence nor assumption of risk appeared as a matter of law. While the evidence is convincing that Smuda was intoxicated to some extent, it was for the jury to say whether plaintiff, using ordinary care, should have appreciated the danger in riding in a car driven by him. Whether plaintiff and the other occupants of the cab engaged in joint frolic, for that purpose wrongfully appropriating the cab, we think was a jury question properly submitted.

Error is assigned on portions of the charge and a refusal to charge. The following excerpts, to which exceptions were preserved, were neither appropriate nor legally accurate:

"Then it is also claimed that the girl herself was careless. Now everybody of course, Susan Rau included, is charged with the duty to use ordinary care. She was not the driver of this car. She was not, if she did not know this man was drunk and unable to move or control that car, then she was not in duty bound to do any back seat driving. * * * Of course, if she knew that this man was drunk or should have known it and in spite of that knowledge knowingly took this ride, then you may find that she was careless and that her carelessness helped to bring about the collision."

Plaintiff and her escort were in the rear seat, and there is no word of testimony that either did or said anything which could have contributed to the "collision." Her contributory negligence, if any, was in riding in an automobile driven by a person under the influence of intoxicants. Statutes and common sense recognize that an automobile in the hands of one under the influence of liquor is an extremely dangerous intrumentality. A driver's intoxication short of the state of being "unable to control" an automobile may make it perilous to ride with him. It appears to us that the following requested instruction, which was refused, more aptly and correctly expresses the law, viz:

"If plaintiff occupied this automobile after attending a pleasure party, and if she was aware of the fact that the driver was drinking intoxicants at this party, and if she knew, or had reason to know, that Smuda was under the influence of liquor to such an extent as to render Smuda incapable of safely and prudently driving the automobile, the plaintiff in such circumstances is guilty of contributory negligence as a matter of law, and plaintiff cannot recover if she is injured as a result of the driver's negligence."

The attempt to pass the cab driven by Rieder, and so carelessly as to come in contact therewith and thus cause the collision with the Weber car, the jury could scarcely attribute to anything else

than Smuda's intoxication. We are of the opinion that reversible error occurred in the part of the charge quoted and in the refusal to charge substantially as requested upon the issue of contributory negligence.

The verdict is challenged as excessive, and other errors are assigned upon the charge and rulings at the trial; but it is not necessary to consider any of them since the new trial is not likely to develop the same questions.

Order reversed and a new trial granted.

WILSON, C. J. (dissents upon the ground that there should be an affirmance, but concurs with the views expressed in paragraphs 1 and 2 of the opinion).

I concur in the opinion in so far as it supports paragraphs 1 and 2 of the syllabus. To that portion in support of paragraph 3 of the syllabus, I dissent. That portion of the charge quoted was not literally correct. I regard it as a clerical or inadvertent inaccuracy which should have been called to the attention of the court. It was not. No exception was taken in reference thereto. Furthermore, the court correctly covered the matter when this language was used:

"It would be the duty of Miss Rau to take into consideration all of the facts that she ascertained in being at the Engelhart residence to determine whether or not the state of intoxication of Smuda was such as to render it unsafe for her to travel with him."

This and other portions of the charge covered the rule with such accuracy that the refusal to give the requested charge in.defendant's language should not be reversible error.

DIBELL, J. (dissents only upon the ground that there should be judgment in this court notwithstanding the verdict instead of a new trial).

I dissent from the opinion in so far as it sustains the denial of the defendant's motion for judgment notwithstanding the verdict.

The majority being of the view that there was no error in denying the motion for judgment notwithstanding, I concur in the holding that there should be a reversal of the order from which the appeal is taken in so far as it denies a new trial, upon the ground that the court erred in refusing the defendant's requested instruction upon contributory negligence and gave none which was a substantial equivalent. The doings of the parties during the revelry of the evening were such as to entitle the defendant to a direct charge on contributory negligence.

I do not agree with the portion of the opinion which seems to suggest the materiality of the fact that the plaintiff may not have known that Smuda was departing from the scope of his employment.

STONE, J. (dissents only upon the ground that there should be judgment in this court notwithstanding the verdict instead of a new trial).

The whole case considered, I see no escape from the conclusion that at the time of the accident Smuda was beyond the scope of his employment. Plaintiff should have known it, but whether she did or not can make no difference in the legal result. However things may have appeared to plaintiff at any stage of the evening's festivities, the decisive question remains—whether Smuda was within the scope of his employment at the time of the accident. I think there can be only a negative answer.

It is not even suggested that at the decisive moment her taxicab was in fact being used for the benefit of its owner, defendant Siegel. Confessedly it was not but was devoted wholly to the uses of plaintiff, Smuda and other members of the "party." The owner had not authorized nor appeared to authorize its use by them. In such circumstances, how the owner can be made to respond in damages for an injury arising solely from the unauthorized and wrongful use of the car to one who participated in that use is beyond me. I agree that there was error in the charge, as indicated by Mr. Justice Holt.