# Louisville Taxicab & Transfer Co. v. Barr.

## Same v. Bryant.

March 19, 1948.

Robert L. Page for appellant.

Herbert H. Monsky for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Reversing.

The judgment was on a directed verdict for the plaintiffs in a joint trial of actions for personal injuries sustained in the wrecking of a taxicab. The jury awarded damages for $1500 to Grace Barr and $1300 to Ivy Bryant.

On Saturday afternoon, May 26, 1945, these young women engaged a taxicab of the appellant in downtown Louisville. They and Mrs. Bryant's companion, one Angelo Mussetelli, sometimes called Joe Manning, a

soldier, went to the home of Gladys Holzapple in St. Matthews. By coincidence, or otherwise, the driver of the cab was William McConathy, who had been an inmate with Mrs. Barr at Ormsby Village, an institution for delinquent and dependent children. The two young women and Mrs. Bryant's companion visited Mrs. Holzapple fifteen or twenty minutes where they engaged in drinking highballs. Grace Barr admits that she became intoxicated. According to plaintiff's testimony McConathy, the taxi driver, stayed in the machine. The party then decided to go to Ormsby Village, a few miles beyond. On the way it was discovered for the first time, according to Mrs. Barr, that they learned she and the driver had known each other at the Village. The driver turned off on a private lane that led to the home of Marion Owens. Instead of following the driveway at the house he turned off and missed the road altogether, barely missing a tree, and ran over a flower bed which he said he did not see. He inquired the way to Ormsby Village and was given directions, but insisted on going through a narrow, rough lane, over which he ran with terrific speed in a cloud of dust. Owens testified that all four of the parties were drunk. While McConathy was arguing and talking rough to Mr. Owens, Grace Barr was in a sottish stupor, and the other couple on the back seat were "necking."

At Ormsby Village, the driver ran around the campus in a reckless way in disregard of the safety of the children who were playing there. According to the plaintiffs, none of the party got out of the cab, but Mrs. Barr called to a priest on the campus and he came to the automobile and talked with her a few minutes. On the contrary, a matron at the Home testified that the two girls and McConathy, the driver, came into the cottage, of which she had charge, and visited with her for about an hour. Grace Barr was drunk, definitely so. Ivy Bryant had the odor of liquor on her breath and acted as if she was intoxicated. McConathy likewise smelled of liquor, and while the witness would not say he was drunk, she realized he was "drinking." About a half a mile on the way back toward the city the taxicab ran off the left side of the road and crashed into a telephone pole, breaking it off. The accident occurred in the late afternoon.

The plaintiffs testified that from the time they left Mrs. Holzapple's home, the taxicab driver ran at a "ridiculous rate of speed," and that they several times protested; but he insisted that he would "get us there all right." They further testified that so far as they knew the driver drank nothing on the trip, and from their viewpoint he "acted normal" or only "silly." But Mrs. Barr had stated in a deposition that "he seemed like he had a little bit to drink." The soldier paid the taxi bill at St. Matthews. There is no testimony that any other fee was ever paid, although Mrs. Barr testified the meter was running all the time. They did not get out of the taxicab at the Village, where they had an opportunity to do so, they said, because they were not in a condition to take a bus or another cab back to the city. Neither the driver of the cab, the soldier, Mrs. Holzapple nor Father Maloney testified.

It is the firmly established rule of law that a person who voluntarily enters or rides in an automobile driven by one whom he knows, or in the exercise of ordinary prudence or diligence should know, is under the influence of intoxicating liquor and such condition proximately causes or contributes to an accident, the guest or occupant is himself guilty of contributory negligence which will preclude his recovery of damages for any injury he might sustain. Winston's Adm'r v. City of Henderson, 179 Ky. 220, 200 S. W. 330, L. R. A. 1918 C. 646; Archer v. Bourne, 222 Ky. 268, 300 S. W. 604; Toppass v. Perkins' Adm'x, 268 Ky. 186, 104 S. W. 2d 423; Rennolds v. Waggener, 271 Ky. 300, 111 S. W. 2d 647; Mahin's Adm'r v. McClellan, 279 Ky. 595, 131 S. W. 2d 478; Whitney v. Penick, 281 Ky. 474, 136 S. W. 2d 570; Sutherland v. Davis, 286 Ky. 743, 151 S. W. 2d 1021; Newton's Adm'r v. Stengel, 297 Ky. 722, 181 S. W. 2d 251; Spivey's Adm'r v. Hackworth, 304 Ky. 141, 200 S. W. 2d 131. These cases also show that the same rule applies where a guest or other occupant does not protest or avail himself of an opportunity to avoid continuing to ride in a car driven in a reckless way, where the factor of intoxication is absent.

It is an exceptional case that relieves a common carrier of responsibility for injury to its patron. Always, however, it has the right to rely upon his contributory negligence. So in Adams v. Hilton, 270 Ky. 818,

110 S. W. 2d 1088, it was held that the rule of imputed negligence of a driver or of contributory negligence of a passenger does not apply to relieve a common carrier where the vehicle was being driven recklessly. To the same effect are Morris v. City Transfer & Yellow Taxi Company, 220 Ky. 219, 294 S. W. 1030, and Shelton Taxi Company v. Bowling, 244 Ky. 817, 51 S. W. 2d 468. The facts in the Adams Case are like those in the instant case, with one material and controlling exception. That is covered by one sentence in the opinion (270 Ky. 818, 110 S. W. 1090): "They (the witnesses) are in accord in saying that the driver had nothing to drink." Nor were there any circumstances that indicated that he was under the influence of intoxicating liquors.

We think the circumstances in this case establish, or at least would permit a jury to believe, that McConathy, the driver of the taxicab, got drunk with the three passengers at St. Matthews. A review of the law of the case must be from that hypothesis.

It shocks the sense of right and justice to say that passengers may get the driver of a taxicab drunk or, at least, lead him into drunkenness, thereby providing a perfect set up for an accident and subjecting themselves to the risk, and then impose liability upon his employer for the consequences of their mutual or common folly. Even the extreme legal responsibility of a common carrier for the safety of its patrons ought not to nullify their conduct.

This is one of those exceptional cases in which a passenger in a taxicab or other vehicle of a common carrier need anticipate culpable negligence of the operator. 37 Am. Jur., Motor Transportation, Sec. 157.

In Wayson v. Rainier Taxi Company, 136 Wash. 274, 239 P. 559, 45 A. L. R. 290, the facts which the jury might have found were that a taxicab driver and his passenger had been drinking together, the passenger, his friend, furnishing the liquor. The cab ran off the road, just as in this case. The court approved an instruction to the effect that if the jury believed that the plaintiff entered the taxicab to be driven by one who had been drinking intoxicating liquor, and prior to starting upon the contemplated journey, the plaintiff knew

that fact, or had reason to believe that the driver was under its influence, then under such circumstances and knowledge the driver's negligence would be imputed to the plaintiff. The court also approved an instruction to the effect that the plaintiff was guilty of contributory negligence if he continued to ride as a passenger knowing the driver to be in such intoxicated condition.

Under the Adams case, it may not be said that the driver's negligence in the instant case could be imputed to the passengers, for the employment or engagement of a taxicab is not to be regarded as a joint adventure, or common enterprise. Yet, it may be said parenthetically, that considering the time element—three or four hours—the distance traveled and all other circumstances (which contradict the oral testimony of the plaintiffs) it would not be going far to say that the driver had departed from the scope of his employment. See Rau v. Smuda, 175 Minn. 328, 221 N. W. 232. In any event, it seems to us that an instruction on contributory negligence is perfectly consistent with our substantive law and practice. Rau v. Smuda, 175 Minn. 328, 221 N. W. 232, supra; Note, 69 A. L. R. 994; Smith v. Service Cab Company, La. App., 155 So. 774; Note, 96 A. L. R. 761; Gilmore v. Huntington Cab Company, 124 W. Va. 469, 21 S. E. 2d 137; Steudle v. Yellow and Checker Cab & Transfer Co., 287 Mich., 1, 282 N. W. 879; Arneson v. Buggs, 231 Wis. 499, 286 N. W. 19.

The case of Morris v. City Transfer & Yellow Taxi Company, 220 Ky. 219, 294 S. W. 1030, 1031, is like Adams v. Hilton, supra, where the driver and passengers in a taxicab went on a joy ride, the passengers, at least, being intoxicated. One of the defenses was that the driver was simply giving the party a gratuitous ride when the cab turned over, so that the relationship of carrier and passenger did not exist. An instruction, copied in the opinion, covering contributory negligence upon the theory that the plaintiffs were riding with an intoxicated driver was held to have been improperly given if the relation of carrier existed. As in the Adams case, here, too, was a material exception from the instant case, namely, "There was no evidence that Payne was so intoxicated as to be unfit to drive the car, and no facts were proved showing that Morris knew this."

We have doubt whether the court should not have directed a verdict for the defendant. However, in view of the testimony of the plaintiffs that they had no knowledge of his intoxication—incredible though that may seem—we conclude that the case should have been submitted to the jury with a contributory negligence instruction, similar to that quoted in Morris v. City Transfer & Yellow Taxi Co., supra, and approved in Wayson v. Rainier Taxi Co., supra.

This judgment is reversed.