

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-11-00390-CR

---

DENNIS R. COOK, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the County Court at Law No. 2
Lubbock County, Texas
Trial Court No. 2009-458,286, Honorable Drue Farmer, Presiding

---

October 23, 2013

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant Dennis R. Cook appeals his misdemeanor conviction for driving while intoxicated and resulting sentence of 180 days' confinement in the county jail, probated. Appellant presents five issues, one arising from a pre-trial suppression hearing and the others from trial. For the reasons that follow, we will affirm.

Background

This factual summary is drawn from the evidence adduced at the suppression hearing. We will mention additional facts as necessary in our discussion of the appellate issues.

On a Tuesday evening, shortly before midnight, Lubbock police dispatch received a complaint that a patron of a local bar was leaving without paying a tab of $10.50. The caller gave police a detailed description of the customer, his vehicle and license plate number, and the fact he had turned westbound on 19th Street. The report was forwarded to a patrol officer in the area of the bar.

The officer saw the vehicle within a short time and executed a traffic stop to investigate the reported theft of service. The vehicle was registered to and driven by appellant. At the vehicle, the officer requested appellant's driver's license which he initially was unable to produce. The officer then requested his home address. Appellant could not correctly state his address until he located his driver's license and the officer read the address from the license. The officer smelled the odor of alcohol coming from appellant's vehicle. Appellant's speech "seemed to be slurred," and he questioned whether he was obligated to show the officer his driver's license. The officer asked appellant to recite a portion of the alphabet. Appellant eventually responded that he was unable to comply because he did not understand the instruction.

At the officer's direction, appellant exited the vehicle. The officer smelled an alcoholic beverage on appellant's breath. Appellant participated in the horizontal gaze nystagmus (HGN) field sobriety test. The officer observed six of six clues of intoxication

2

on the test. Appellant declined to perform the walk and turn test or the one-leg stand. At that point, the officer placed appellant under arrest for driving while intoxicated. Appellant refused a breath test, received the *Miranda*[1] warnings, and terminated the interview.

Appellant was charged by information with misdemeanor driving while intoxicated. After a hearing, appellant's motion to suppress evidence of the stop was denied by written order. Findings of fact and conclusions of law were not filed. At trial, a jury convicted appellant of the charged offense and the court set punishment at confinement in the county jail for 180 days probated for eighteen months. This appeal followed.

Analysis

Suppression Issue

By his first issue, appellant asserts the trial court abused its discretion by denying his motion to suppress and in so doing violated his Fourth Amendment rights. Appellant presents the issue through multiple sub-parts. All his Fourth Amendment contentions arise from the evidence the officer stopped appellant to investigate the theft offense, but quickly abandoned that intended investigation to focus on intoxication.

A trial court's ruling on a motion to suppress is reviewed for abuse of discretion. *Oles v. State,* 993 S.W.2d 103, 106 (Tex.Crim.App. 1999). In a suppression hearing, the trial court is the sole judge of the credibility of the witnesses and the weight given their testimony. *State v. Ross,* 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000). We

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

afford almost total deference to the trial court's determination of historical facts. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). However, detention and reasonable suspicion are by nature legal concepts and are properly subject to *de novo* review. *Hunter v. State,* 955 S.W.2d 102, 107 (Tex.Crim.App. 1997); *Sanders v. State,* 992 S.W.2d 742, 744 (Tex.App.--Amarillo 1999, pet. refused). Accordingly, for purposes of a Fourth Amendment analysis we give appropriate deference to the trial court's determination of historical facts, but we review the decision of the trial court *de novo* as to whether the historical facts, viewed from the standpoint of an objectively reasonable person so situated as was the police officer, amount to "reasonable suspicion" justifying an investigatory detention. *Ornelas v. United States,* 517 U.S. 690, 697-99, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *Guzman,* 955 S.W.2d at 89. When, as here, no findings of fact were requested nor filed, we review the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *See Ross,* 32 S.W.3d at 855-56.

An officer conducting an investigatory detention or stop may briefly detain a person reasonably suspected of criminal activity to determine his identity or to momentarily maintain the status quo while obtaining more information. *Adams v. Williams,* 407 U.S. 143, 146-47, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Rhodes v. State,* 945 S.W.2d 115, 117 (Tex.Crim.App. 1997) ("[O]fficers may use such force as is reasonably necessary to effect the goal of the stop: investigation, maintenance of the status quo, or officer safety"). An investigatory detention is reasonable, and therefore constitutional, if (1) the officer's action was justified at the detention's inception; and (2) the detention was reasonably related in scope to the circumstances that justified the

4

interference in the first place. *Terry v. Ohio,* 392 U.S. 1, 19-20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Under the first prong of *Terry,* the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. at 21. The officer must have a "reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication that the unusual activity is related to crime." *Davis v. State,* 947 S.W.2d 240, 244 (Tex.Crim.App. 1997) (citing *Meeks v. State,* 653 S.W.2d 6, 12 (Tex.Crim.App. 1983)). "The second prong of *Terry* deals with the scope of the detention. . . . [A]n investigative detention, 'like any other search, must be strictly circumscribed by the exigencies which justify its initiation.'" *Davis,* 947 S.W.2d at 243 (quoting *Terry,* 392 U.S. at 25-26). A "detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists." *Derichsweiler v. State,* 348 S.W.3d 906, 914 (Tex.Crim.App. 2011) (footnotes and quotation marks omitted). For this determination, a police department 911 dispatcher is generally considered a "cooperating officer." *Id.*

A traffic stop may include investigation of the suspected offense as well as a license and warrant check. *Kothe v. State,* 152 S.W.3d 54, 63 (Tex.Crim.App. 2004); *see* Tex. Transp. Code Ann. § 521.025(a)(2) (West 2013) (person required to hold driver's license must possess license while operating motor vehicle and driver must display license on demand of peace officer). Only after a computer check of the license

5

and warrant status is completed and "the officer knows that this driver has a currently valid license, no outstanding warrants, and the car is not stolen, [is] the traffic-stop investigation fully resolved." *Kothe,* 152 S.W.3d at 63-64, 65. If during a *Terry* stop an officer develops reasonable suspicion of the occurrence of another violation, the scope of the initial investigation expands to include the new offense. *See Goudeau v. State,* 209 S.W.3d 713, 719 (Tex.App.--Houston [14th Dist.] 2006, no pet.) (citing *Sims v. State,* 98 S.W.3d 292, 295-97 (Tex.App.--Houston [1st Dist.] 2003, pet. refused); *Powell v. State,* 5 S.W.3d 369, 378-79 (Tex.App.--Texarkana 1999, pet. refused); *Mohmed v. State,* 977 S.W.2d 624, 628 (Tex.App.--Fort Worth 1998, pet. refused)).

A common investigative technique used in a *Terry*-type stop is interrogation, which *inter alia* includes a request for identification. *Kothe,* 152 S.W.2d at 64 (quoting 4 Wayne R. LaFave, Search and Seizure § 9.2(f), at 51-58 (3d ed. 1996) (citations omitted)). An officer may also communicate with others, including police, to confirm the identification or determine if a person of that identity is wanted. *Id.*

Here, appellant does not take exception to the officer's stop of appellant's vehicle based on his articulable suspicions of theft of service. It is the scope of the detention, or second *Terry* prong, with which appellant takes exception. After executing the stop, the officer immediately requested appellant's driver's license. According to the officer's testimony, "As soon as I made contact with [appellant] and stopped him, I started noticing clues of intoxication."

We begin by noting that appellant's argument in support of his first issue contains the complaint that the State charged him with theft of service despite the officer's failure

6

to conduct an investigation of that offense after he initiated the traffic stop. Because we are concerned in this appeal only with appellant's conviction for driving while intoxicated, we do not address any consequence of the officer's actions with respect to the propriety of the theft charge.

Appellant's remaining contentions begin with a statement from the Fifth Circuit's opinion in *United States v. Estrada*, "Once the purpose of a valid traffic stop has been completed and an officer's initial suspicions have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articulable facts." 459 F.3d 627, 631 (5th Cir. 2006). From that statement and other similar statements from other opinions, appellant reasons that the Lubbock officer who stopped him was duty-bound first to pursue his investigation of the suspected theft offense, and was constitutionally permitted to initiate an investigation of appellant's intoxication only after verifying or dispelling that initial suspicion of theft. Appellant is mistaken.

Measuring the reasonableness of an officer's actions under Fourth Amendment analysis, a court examines the totality of the circumstances and avoids bright-line rules, recognizing "the fact-specific nature of the reasonableness inquiry." *Ohio v. Robinette*, 519 U.S. 33, 39, 136 L.Ed.2d 347, 117 S. Ct. 417 (1996).[2] Appellant's contention would

---

[2] Appellant's argument contains an underlying premise that the officer's request for appellant's driver's license cannot properly be viewed as a part of investigation of the theft charge. Appellant cites *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), as limiting an officer's ability to request driver's license information. That case addresses the reasonableness of "spot checks," traffic stops made without probable cause or reasonable suspicion of criminal involvement. 440 U.S. at 663. It does not assist appellant's argument in this case, involving a stop based on the officer's reasonable suspicion that appellant had just committed the offense of theft of service.

7

establish a bright-line rule. Further, the contention runs directly contrary to the precept made clear in *Kothe*, where the Court of Criminal Appeals noted, "[N]either the Fourth Amendment nor the Supreme Court dictate that an officer making a *Terry* traffic stop must investigate the situation in a particular order." 152 S.W.3d at 65 (citing *United States v. Brigham*, 382 F.3d 500, 511 (5th Cir. 2004)).

The testimonial and video evidence from the suppression hearing supports an implicit finding by the trial court that the officer reasonably suspected appellant was intoxicated. Appellant could not locate his driver's license and expressed reluctance to display it for the officer, his speech seemed slurred to the officer, he was unable to recall his home address even though that was his expressed destination, the odor of alcohol proceeded from his vehicle and he had left a bar minutes before. At that point, the scope of the investigation properly expanded to include the offense of driving while intoxicated. *See Goudeau,* 209 S.W.2d 719-20 (rejecting argument that officer's failure to investigate suspected offense that precipitated traffic stop precluded expansion of investigation when officer reasonably developed suspicion driver was intoxicated).

Appellant does not argue that his detention was unreasonably prolonged by the officer's investigation of his intoxicated driving.[3] He effectively argues, in fact, it was unduly shortened by the officer's failure to proceed for some time with an investigation of the theft offense before turning to the more serious matter of appellant's driving while intoxicated. We find no merit in appellant's contentions, and overrule his first issue.

---

[3] *See, e.g.*, *United States v. Shabazz,* 993 F.2d 431, 436-37 (5th Cir. 1993) (discussing circumstances in which initially proper detention may become unreasonable under second prong of *Terry* test); *St. George v. State*, 237 S.W.3d 720, 726 (Tex.Crim.App. 2007) (finding continued detention for questioning of passenger unreasonably prolonged stop).

8

Trial Issues

Cocaine Statement and Mistrial

In his second issue, appellant asserts the trial court abused its discretion by admitting the testimony of the bar manager that he overheard appellant ask a waitress how he might obtain some cocaine. Appellant continues that the error was harmful because the jury might have rationalized appellant was guilty of driving while intoxicated since he apparently also committed more serious offenses. The State concedes the testimony was inadmissible but counters the error was harmless because the evidence of appellant's guilt of driving while intoxicated was overwhelming.

In his related third issue, appellant asserts the error of the trial court in admitting the bar manager's testimony to appellant's question regarding cocaine was incurable, thus requiring a mistrial.

We will assume, but do not decide, the trial court erred by admitting the cocaine-related statement into evidence. The erroneous admission of evidence generally constitutes non-constitutional error and is therefore subject to a harm analysis under appellate rule 44.2(b). *Potier v. State,* 68 S.W.3d 657, 666 (Tex.Crim.App. 2002); *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App. 1998); Tex. R. App. P. 44.2(b). Under Rule 44.2(b) we must disregard the error unless it affects an appellant's substantial rights. Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). Conversely, if after examining the entire record we have a "fair assurance that the error did not influence the jury, or had

but a slight effect," the erroneous admission of evidence did not affect a substantial right. *Johnson,* 967 S.W.2d at 417. "'[T]he presence of overwhelming evidence of guilt plays a determinative role' in this analysis." *Neal v. State,* 256 S.W.3d 264, 285 (Tex.Crim.App. 2008) (quoting *Motilla v. State,* 78 S.W.3d 352, 356 (Tex.Crim.App. 2002)).

The evidence shows appellant consumed three beers before leaving the bar without paying his tab. The officer stopped appellant in his vehicle shortly after his departure from the bar. The officer smelled alcohol and noticed slurred speech and confusion. The officer testified at that point the investigation "went from a theft investigation to a DWI investigation." The officer elaborated later in his testimony that in speaking with appellant he "immediately" noticed signs of intoxication. The jury was shown a video and audio recording of the stop and the officer's investigation of appellant's suspected intoxication. From the stop's inception, the video depicts appellant in a state of confusion. He was not able initially to locate his driver's license and then expressed uncertainty whether he must allow the officer to see it. He could not recall his correct home address although he emphatically told the officer that was his immediate destination. When asked his highest level of education, appellant, a law school student, told the officer he did not believe himself "smart enough to answer that," and he "believed" he attended high school. Appellant was unable to recite a portion of the alphabet on the officer's request because, according to appellant, he did not understand the request. When appellant exited the vehicle at the officer's request, the officer smelled an odor of alcohol on his breath. According to the officer, appellant exhibited all six clues of intoxication on the HGN test. He refused to give a breath

sample. Appellant could not even begin the walk-and-turn test and simply sat on the curb when asked to perform the one-leg stand. From the behavior appellant demonstrated on the video and audio recording, we think the jury would have had no reasonable doubt he did not have the normal use of his mental or physical faculties. *See* Tex. Penal Code Ann. § 49.01(2)(A) (West 2011) (a definition of intoxicated).

From our review of the entire record, we conclude any error of the trial court in allowing the challenged portion of the bar manager's testimony did not influence the jury, or had but a slight effect on its verdict of guilt. We overrule appellant's second issue.

In his third issue, appellant complains the error of the trial court in admitting the cocaine statement was incurable requiring a mistrial. The argument rests on a dual claim that the jury was encouraged to convict appellant of the charged misdemeanor by evidence implying he was guilty of a felony and because the court did not give an instruction to disregard the complained-of portion of the bar manager's testimony until the morning following the errant testimony.[4]

We review a trial court's denial of a motion for mistrial for abuse of discretion. *Hawkins v. State,* 135 S.W.3d 72, 77 (Tex.Crim.App. 2004). "A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and

---

[4] The jury was instructed to disregard the bar manager's last response during his testimony the previous afternoon, during which the manager identified the drug appellant mentioned to the waitress as "cocaine." The court overruled appellant's objection to the manager's testimony using the word "drugs." In the context of the entirety of the manager's testimony, and of the other evidence presented, we think the jury was more likely to be confused than persuaded to a finding of guilt by the evidence of appellant's statement to the waitress.

expense would be wasteful and futile. Thus, a trial court may properly exercise its discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error." *Ladd v. State,* 3 S.W.3d 547, 567 (Tex.Crim.App. 1999). Error is harmless if after examining the record as a whole, an appellate court has a fair assurance the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *Garcia v. State,* 126 S.W.3d 921, 927 (Tex.Crim.App. 2004). Because we have found any error in admitting the cocaine statement harmless we also find a mistrial was not warranted as admission of the complained-of testimony did not result in an improper verdict. The trial court did not abuse its discretion in denying appellant's motion for mistrial. Appellant's third issue is overruled.

Intoxication Opinion of Bar Manager

By his fourth issue, appellant asserts the trial court reversibly erred by allowing the bar manager to render an opinion that appellant was intoxicated. Trial testimony indicated the bar manager was trained to notice "indications of intoxication." On direct examination by the State, he was asked if he had an opinion concerning whether appellant was intoxicated on the night in question. Appellant objected on the ground that the bar manager had not been designated an expert and was not qualified to render an expert opinion on the question interposed. The State responded that the bar manager was not offered as an expert and the opinion requested was that of a lay witness "who was serving the alcohol and had the responsibility of cutting off [appellant] or not cutting off [appellant]." The trial court overruled the objection and the bar manager opined that appellant was intoxicated. He based his opinion on appellant's

12

"[c]onfused nature, the absurdity of walking a 10.50 tab. It's not that he didn't have the money, I guess. He paid his first one.[5] It was a combination of things. It just didn't make sense."

Rule of Evidence 701 provides, "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Tex. R. Evid. 701.

Appellant's complaint here is the bar manager was testifying as an expert. "When a witness who is capable of being qualified as an expert testifies regarding events which he or she personally perceived, the evidence may be admissible as both Rule 701 opinion testimony and Rule 702 expert testimony." *Ellison v. State,* 201 S.W.3d 714, 723 (Tex.Crim.App. 2006) (quoting *Osbourn v. State,* 92 S.W.3d 531, 536 (Tex.Crim.App. 2002)). Moreover, the State informed the trial court, before it ruled on appellant's objection, the opinion requested was that of a lay witness. And appellant does not assert that the State designated the bar manager an expert. Lay witnesses in Texas have long been allowed to opine on the intoxication or sobriety of persons they observe. *See, e.g., McNorton v. State,* 170 Tex. Crim. 76, 338 S.W.2d 953, 954 (Tex.Crim.App. 1960). ("One need not be an expert in order to express an opinion upon whether a person he observes is intoxicated or is sober"). The bar manager based his opinion on matters he observed and the substance of the opinion, if believed by the jury,

---

[5] There was evidence that earlier in the evening in question appellant was at the bar, purchased one or two drinks, paid his tab, and left.

was helpful to its determination of a fact issue in the case, whether appellant was intoxicated *vel non.* We find no abuse of discretion in allowing the opinion testimony of the bar manager.

If, however, the trial court exceeded its discretion in permitting the witness to render an opinion on intoxication, the error is subject to a non-constitutional harmless error review. The bar manager's opinion of appellant's intoxication, at a point in time moments before the officer effected a traffic stop of appellant's vehicle, was cumulative of a substantial and compelling body of evidence tending to support the jury's finding of appellant's intoxication. No harm is demonstrated if the erroneously admitted evidence is generally cumulative of other properly admitted evidence in the case. *Anderson v. State,* 717 S.W.2d 622, 628 (Tex.Crim.App. 1986). Appellant's fourth issue is overruled.

Charge Error

By his fifth issue, appellant asserts the trial court reversibly erred by placing the "guilty" verdict form before the "not guilty" verdict form in the charge as given the jury. The forms were printed on separate pages. The court overruled appellant's objection that placement of the verdict forms in this order violated the presumption of innocence. Before deliberation began the court did, however, explain to the jury that the verdict forms were not in a particular order.

Our review for charge error requires we first determine whether error exists. *Druery v. State,* 225 S.W.3d 491, 504 (Tex.Crim.App. 2007). We review for claimed charge error under the abuse of discretion standard. *See Wesbrook v. State,* 29

S.W.3d 103, 122 (Tex.Crim.App. 2000) (finding no abuse of discretion in refusing to submit instruction). If error is found, we then determine whether the error caused sufficient harm to require reversal. *Druery,* 225 S.W.3d at 504.

"The presumption of innocence is a doctrine that allocates the burden of proof in criminal trials; it also may serve as an admonishment to the jury to judge an accused's guilt or innocence solely on the evidence adduced at trial and not on the basis of suspicions that may arise from the fact of his arrest, indictment, or custody, or from other matters not introduced as proof at trial." *Bell v. Wolfish,* 441 U.S. 520, 533, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Miles v. State,* 204 S.W.3d 822, 825 (Tex.Crim.App. 2006). In the charge, the trial court properly instructed the jury of the presumption of innocence including appellant's right to produce no evidence and the State's burden to prove each element of the charged offense beyond a reasonable doubt. Absent such proof, the jury was further instructed, it was obligated to acquit appellant. An appellate court generally presumes the jury followed the instructions of the trial court in the manner presented. *Colburn v. State,* 966 S.W.2d. 511, 520 (Tex.Crim.App. 1998). The presumption is rebuttable. *Id.* But appellant points to nothing in the record to support a conclusion that the jury ignored the detailed written instructions of the trial court and was persuaded in favor of a guilty verdict by the order of verdict forms in the charge.

The clerk's record contains only the verdict form finding appellant guilty. Appellant argues, alternatively, that unless a "not guilty" form is produced, the trial court denied him due process by "apparent[ly]" not providing the jury with an alternative to the guilty form. We find no merit to the contention. If appellant believed the clerk's record required supplementation he was free to do so by letter directing compliance by the

clerk.  Tex. R. App. P. 34.5(c)(1).  Or if he believed the not guilty verdict form was lost or destroyed, he could have availed himself of the procedure for resolving such a problem contained in appellate rule 34.5(e).  Tex. R. App. P. 34.5(e).  Its mere absence from the clerk's record filed on appeal does not demonstrate the trial court did not supply the jury with the "not guilty" verdict form.  Appellant's fifth issue is overruled.

## Conclusion

Having overruled each of appellant's issues on appeal, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.

.