## Mahin's Adm'r v. McClellan.

May 30, 1939.

Joseph J. Hancock, Judge.

596

William Alpha Hubbard and Marvin C. Werle for appellant.

Finley F. Gibson, Jr., for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

The appellant, Lincoln Bank & Trust Company, administrator with the will annexed of the estate of Jessie Mahin, deceased, is appealing from a judgment on a verdict where the jury was peremptorily instructed to find for the appellee, Joseph McClellan. The appellant brought the action against the appellee to recover damages for the alleged wrongful death of Jessie Mahin. In urging reversal it is insisted that (1) the case should have been submitted to the jury on the question as to whether or not McClellan was so intoxicated as to be unable properly to operate or control his car; (2) the court erred in holding that the testimony of the appellee's two witnesses was conclusive that the decedent had knowledge that McClellan was drunk when she entered his car; (3) the swearing of the jury should have been set aside and the case reassigned for trial on the ground of surprise, and when this was not done a new trial should have been given on the ground of newly discovered evidence; and (4) the deceased, Jessie Mahin, was justified in jumping from the appellee's car in the emergency which existed, and was not negligent under the circumstances in so doing.

Joseph McClellan was postmaster at Glenview on the Upper River Road in Jefferson County, Kentucky, at the time Jessie Mahin was fatally injured. He had served in that capacity for a number of years. Jessie Mahin, a colored woman, age 54, had worked in the household of Judge Lafon Allen at Glenview for a number of years. McClellan lived in Louisville, and, on occasions, Jessie Mahin rode into Louisville with him after working hours. She got in the back seat of McClellan's car shortly after 6 o'clock on the afternoon of August 25, 1936, for the purpose of riding into Louisville with him.

Witnesses testified that they heard a grating noise which sounded like a car had run into the curbing, as

McClellan was driving along Hillcrest Avenue after he left the Brownsboro Road. According to one witness, the car was going from about 20 to 30 miles an hour at that time. This witness testified that the driver seemed to lose control of the car after it passed him, and that he saw the car door fly open and two bundles roll out. There was testimony also that McClellan was driving his car in a zig-zag manner along Hillcrest. When McClellan was approximately a block and a half from Frankfort Avenue where he stopped because the gates were down for a passing train, Jessie Mahin either fell from the car or jumped from it while it was in motion. There were no eye-witnesses to the accident. It was stipulated that Jessie Mahin died on September 8, 1936, as a result of the injuries she received in the accident on August 25, 1936.

McClellan testified that, as he was driving south along Hillcrest toward Frankfort Avenue, he saw a car coming toward him on his side of the street; that he swerved his car, thereby going over the curb, and that he ran along that way for some little distance; that he heard Jessie Mahin scream; that when he came up to the railroad tracks where he stopped he noticed that the righthand door of his car was open; and that he shut the door and saw that Jessie Mahin was not in the car. He said that he ''just supposed she had stepped out because I was going slow; dragging along all of the way through.'' He testified also that he had drunk a bottle of beer about 1 o'clock in the afternoon of August 25th, and had had a drink of whiskey about 3 o'clock. When asked whether or not he was drunk, he testified, ''Well, I would not say that I was drunk.'' McClellan's testimony as to whether or not the drinks he had taken affected the manner in which he drove his car is as follows:

''55. Did these drinks you say you had on that day have anything to do with the manner in which you say you were driving that car? A. Well, I don't know; I could not say.

''56. Can't you answer that question, Mr. McClellan? A. I don't think so.

''57. Then would you say drink did not have anything to do with the manner in which you were driving the car?

"Mr. Gibson: He answered it once, Judge, and said he did not think so.

"Mr. Werle: That is not a positive answer.

"Mr. Gibson: How can you ask him to give it any more definite? (The question was not answered.)

"58. Now, from the time that this accident is alleged to have happened to the time that the police came to your residence on Longest Avenue, did you have anything further to drink? A. No, sir; nothing at all."

Officers, who saw McClellan a short time after the accident, testified that he was drunk.

McClellan testified also that Jessie Mahin had been at the post office around 25 to 20 minutes before 6 o'clock; that she had asked him about the time; and that she said she had missed the 5 o'clock bus and wanted to ride into town with him.

Frances Moore Wilson, a colored woman, testified that she was at Glenview waiting for the 6 o'clock bus when Jessie Mahin came down to the road. She was sitting in a service truck with George Ahrendt, a witness for the appellee. She said also that:

"Jessie yelled at me and said 'Mr. Joe' (McClellan) would take us to Crescent Hill to catch a city car. I got out of the Ballard's truck and walked across the road to get in with them, and then suddenly I remembered I had to meet somebody on the bus, and I told her the same, and I walked back and sat down in the truck and that was the last I saw of Jessie or Mr. McClellan."

The witness Ahrendt testified that he was at the post office about 2:30 or 3 o'clock and that McClellan gave him back almost $2 in change for a dollar bill which he had given McClellan to pay for some stamps. As to McClellan's condition at that time Ahrendt said:

"He was not to say exactly to himself. He was not exactly setting down or staggering at the time, but he could not, it seemed like, get himself together. He didn't have no mind on what he was doing."

He testified also that he shook his head for them (Jessie Mahin and Frances Wilson) not to get in the car

because he suspicioned that McClellan was "a little bit off that day." On cross examination Ahrendt testified that he had not talked with Jessie Mahin on the day of the accident, but that she was standing near him when he told Frances Wilson that it was not safe for her to ride with McClellan. He said also that Jessie Mahin was at the station around 5 o'clock in the afternoon.

The appellee's witness, Theresa Egger, testified that she saw McClellan around noon and between 5 and 5:30 in the afternoon. She said that Jessie Mahin was sitting on a bench in front of the station when she saw McClellan the second time. She testified also that Jessie Mahin told her that she thought she would ride in with "Mr. Joe," and that she told her that she did not believe she would because she (Egger) thought "Mr. Joe" was drunk. On cross examination Theresa Egger testified that she had not seen McClellan drinking. She said also that she did not know whether or not Jessie Mahin had seen McClellan that day. In answer to the question put by counsel for the appellee, "And you warned her not to get in the car and ride with him?" the witness answered, "Absolutely, I did."

When the trial court indicated that the appellee's motion for a peremptory instruction would be sustained, counsel for appellant moved the court to set aside the swearing of the jury on the ground of surprise, and to re-assign the case for trial. This motion was overruled, and the appellee's motion for a peremptory instruction was granted. In giving his reasons for granting the appellee's motion for a peremptory instruction the trial court said:

"And I am, therefore, compelled to say at this time that the testimony of these two witnesses (Ahrendt and Egger) is conclusive, and there is not anything for you gentlemen to pass on, and you must take the testimony of these witnesses as true."

In seeking a new trial on the ground of newly discovered evidence counsel for the appellant filed affidavits of Ed Scott, who worked as gardener for Judge Lafon Allen at Glenview; Phil Howard, who worked for Judge Allen; Sallie Howard, wife of Phil Howard, and who worked for Judge Allen as a substitute cook; and Hattie Givens, operator of a beauty shop. These affidavits were offered by the appellant with the view of showing that Jessie Mahin had not been at the post office on Au-

gust 25th prior to the time she left the Allen home shortly after 6 o'clock. Ed Scott stated that he had been on the Allen premises throughout the day and that Jessie Mahin did not leave there until after 6 o'clock. Phil Howard stated that he had been there most of the day; that he had been at the post office between 4:30 and 5 o'clock; that he did not see Theresa Egger while he was there; that Jessie Mahin told him that she was going to catch the bus when she left the premises shortly after 6 o'clock; and that he was positive that she did not leave the house all that day until she left to catch the bus. Sallie Howard stated that she was in the beauty shop of Hattie Givens late in the afternoon of August 25th, and that she talked with Jessie Mahin over the telephone for approximately 10 minutes after 5 o'clock. Hattie Givens' statement was in support of that of Sallie Howard.

The principal controversy before us involves the question as to whether or not Jessie Mahin knew that McClellan was drunk when she entered his car. If she did, she assumed the risk when she got in the car to ride into Louisville with McClellan. Rennold's Adm'x v. Waggener, 271 Ky. 300, 111 S. W. (2d) 647. But, as pointed out in Toppass v. Perkins' Adm'x, 268 Ky. 186, 104 S. W. (2d) 423, whether a guest is contributorily negligent in riding with an intoxicated driver is usually a question of fact, and should therefore be submitted to a jury as to whether the driver was so intoxicated as to affect his ability to operate the car, and also as to whether the guest, in the exercise of ordinary care, had any cause to be apprehensive on that account for his own safety.

We have noted that the trial judge took the view that the testimony of the witnesses Ahrendt and Egger was conclusive, and that their testimony was true, and therefore gave a peremptory instruction in favor of the appellee. In this conclusion we think the trial judge erred. It is our view that there was sufficient evidence on the questions at issue to warrant the submission of the case to the jury. (See cases cited above.) Frances Wilson testified that she did not get in McClellan's car because she remembered that she was to meet someone on the bus. Ahrendt testified that he told Frances Wilson that he did not think it was safe for her to ride with McClellan and that he shook his head at her and Jessie Mahin for them not to get in the car because he suspicioned that McClellan was "a little bit off that day."

Furthermore, there is considerable conflict in the evidence as to whether or not McClellan was drunk at the time the accident took place. He testified that he had had a bottle of beer about 1 o'clock and a drink of whiskey about 3 o'clock. The accident occurred around 6:30. He testified also that he would not say that he was drunk, and he did not think that the drinks that he took had anything to do with the manner in which he was driving his car. On the other hand, we have the testimony of the officers that McClellan was drunk when they saw him a short time after the accident, and also the testimony of other witnesses to the effect that they thought that McClellan was drunk and acting queer during the afternoon.

Having reached the conclusion that the trial judge erred in giving the peremptory instruction in favor of the appellee, it is unnecessary to discuss and pass upon other questions raised by the appellant.

Judgment reversed for proceedings consistent with this opinion.