MRS. CARL YOUNG *v.* FRED WHEBY

(No. 9497)

Submitted April 4, 1944. Decided April 25, 1944.

*D. Grove Moler* and *Hutchinson & Trail,* for plaintiff in error.

*Grover C. Worrell,* for defendant in error.

ROSE, PRESIDENT:

In the Circuit Court of Wyoming County Mrs. Carl Young recovered judgment for $500.00 against Fred Wheby for injuries sustained by her while a passenger in a car owned and driven by Wheby, which was wrecked in the Village of Mabscott, a suburb of Beckley, in Raleigh County, to which judgment this writ of error was awarded.

The plaintiff, Mrs. Young, operated a beauty parlor belonging to another in the Village of Rhodell. The defendant operated a filling station at Allen Junction just across the line in Wyoming County. These two, with one Victor Augustine, who operated a restaurant in Rhodell, on the evening of December 3, 1941, at about eight

o'clock, left Rhodell for Beckley in Wheby's car to attend a vaudeville show. They stopped at Mabscott, where Augustine's wife joined the party. After the show, near midnight, they proceeded to Shady Springs, about seven or eight miles southeast of Beckley, where they spent apparently about an hour and a half in the Dutch Villa, a road house, dancing and having refreshments. Then they returned to Mabscott, where Mrs. Augustine left the party to stay with her mother, who resided there. The other three started out of Mabscott by a road which had an ascending grade of about twenty per cent, but was wide and well paved. At a distance of about 500 feet up this grade the car ran on to the berm and while Wheby was trying to get it back on to the pavement, it skidded and was wrecked, resulting in the plaintiff's injury. She would justify her recovery on the ground of Wheby's negligence and her alleged status as a guest passenger.

The defendant would reverse the judgment on the ground that, by her own evidence, she clearly assumed the risk of riding with the defendant after he had demonstrated his recklessness in driving, and upon the further ground that her negligence contributed to her injury.

Plaintiff testified that on their way from Rhodell to Beckley the party stopped at the Village of Sophia, where the two men went into the liquor store and bought a pint of whiskey from which they and she, immediately thereafter, took a drink, and that when Mrs. Augustine joined the party at Mabscott they each took another drink. She also admits, on cross-examination, that she "had had a few drinks". She denies that there was any drinking at the Dutch Villa, but on being asked what was the defendant's condition at the immediate time of the wreck she says "he was drinking", and that Augustine, who was in the car with them, was also drinking.

There seems to have been no criticism of Wheby's manner of driving until the party left the Dutch Villa. The plaintiff says that, during the trip back from that place to Mabscott, "Mr. Wheby was driving so reckless and fast we all asked him to slow down and not drive so

fast", and that "Mr. Augustine said to him if he didn't slow down and drive better, he was going to have to let him out and he would get a taxi and take his wife home"; that Mr. Augustine wanted his wife to "go to Rhodell and she said no, she wouldn't go, because of his (Wheby's) driving, and we took her to Mabscott". At another point in her testimony she says "I asked him not to drive so fast and to please be a little more careful, that he was scaring us all to death". She further states that when the three left Mabscott Mr. Augustine "asked Mr. Wheby if he wanted to let him drive, if he was all right" and that Wheby said "no, he was perfectly all right to drive".

On being asked why she did not leave the car when it stopped in Mabscott, the plaintiff stated that she "had to get back to Rhodell", where she "had an appointment for eight o'clock the next morning", and, on being asked whether this appointment justified the risk, her reply was "business before pleasure". On being further asked if Wheby's assurances sounded all right to her, she replied: "He was in there, too. It was his life the same as it was mine".

Mrs. Augustine was called as a witness by the plaintiff and testified that on the return trip from Dutch Villa the defendant "was driving reckless and fast. I asked him not to"; that although she had intended to go back to Rhodell, she "got scared at Mr. Wheby's driving and went to my mother's at Mabscott". She further corroborates the plaintiff that all three of the others in the car vigorously protested against Wheby's driving. She admits that they all took a drink when she joined the party, and says, in response to the question whether there was any drinking at Dutch Villa—"we each one taken a little one. I don't know exactly whether each one taken one but I think they did". Describing Wheby's driving, she says: "Well, he would first be on the shoulder of the road and then on the hard surface and back out on the shoulder". She was asked whether she got out and went into her home and stayed all night because of the way he

was driving. She answered, "I did, and tried to get Victor to stay".

We consider that this evidence on behalf of the plaintiff clearly establishes as a fact in the case that the defendant Wheby was recklessly driving his car on the return trip from Dutch Villa to Mabscott, and that the plaintiff fully understood this situation and appreciated the danger thereof. She, of course, had a perfect opportunity to alight from the car while it was stopped at Mabscott, but with full knowledge of her danger and risk, elected to proceed. By her own statements "business before pleasure" and "it was his life as well as mine" she shows that she deliberately assumed this risk. She cannot be heard to complain of any injury that resulted from the driver's continued carelessness and recklessness after her opportunity to leave the car at Mabscott. Thenceforth she proceeded at her own risk. She had protested, of course, but words of protest, however opportune and vigorous, are not a mere formula, the utterance of which legally relieves the guest from exercising proper care and transfers all responsibility to the host driver. The guest must be alert and intelligent. If protests are vain, resort must be had to such other means of securing safety as may be presented. Specifically, she must alight from the car, if opportunity is given, to avoid exposure to further recklessness of the driver. *McGaffigan* v. *Kennedy,* 302 Mass. 12, 18 N. E. (2d) 344; *Lynn* v. *Goodwin,* 170 Cal. 112, 148 P. 927. *Bourestom* v. *Bourestom,* 231 Wis. 666, 285 N. W. 426; *Bogen* v. *Bogen,* 220 N. C. 648, 18 S. E. (2d) 162; *Wilson* v. *Hill,* 103 Colo. 409, 86 P. (2d) 1084; *Donelan* v. *Wright,* 148 Kan. 287, 81 P. (2d) 50; *Blazer* v. *Freedman,* 165 Wash. 476, 5 P. (2d) 1031; *Lorance* v. *Smith,* 173 La. 883, 138 So. 871; *Archer* v. *Bourne,* 222 Ky. 268, 300 S. W. 604.

The plaintiff, with full knowledge of the defendant's drinking and present condition, and his utter lack of response to all importunities to be careful, of the terror of others in the car, and of Mrs. Augustine's withdrawal therefrom, complacently continued to ride with this reck-

less driver. Whether her conduct is more accurately characterized as contributory negligence or as an assumption of risk, the result is the same. She is barred from recovery of damages for her injury. No doubt on this matter existed to be submitted to a jury. The Court can see that the plaintiff, as a matter of law, has failed to make a case. The motions to direct a verdict for the defendant should have been sustained. Accordingly, the judgment will be reversed and the verdict set aside.

The case of *Gilmore* v. *Huntington Cab Co.*, 124 W. Va. 469, 21 S. E. (2d) 137, is not a precedent for the sustaining of the present judgment. There, it was held that it was not conclusively shown that the injured guest knew of the driver's drunken condition, and she had no opportunity to escape from the car after the reckless driving began.

As a new trial may be had it is necessary to consider some other matters in the case. On cross-examination the plaintiff admitted that in another proceeding in the same court she gave an entirely different story of this episode. That proceeding was one by the former wife of plaintiff's present husband to recover the custody of her children on the ground that the plaintiff and her husband were unfit to have their custody. Mrs. Young, in that proceeding, testified that she had not been with Wheby on this occasion and that there was no drinking on the trip. She admits freely that this was false and undertakes to justify herself by saying that she was advised to thus falsify her testimony by her counsel.

Further, the plaintiff, on cross-examination, was confronted with a letter claimed to have been written by her, the authorship of which she denied. This letter was subsequently tendered in evidence by the defendant.

The defendant testified on his own behalf and completely proved a case of negligence against himself, and charges contributory negligence on the part of the plaintiff. His story is that he and Augustine had agreed to go out on a "spree" that evening, as they had done before, and invited Mrs. Young to go with them to the theatre;

that they bought two pints of whiskey at Sophia instead of one, and that the purchase was made at Mrs. Young's request; that at the Dutch Villa they all drank, including the plaintiff, and that upon their return to Mabscott, after the Augustines had left the car, he and the plaintiff were alone for some fifteen to thirty minutes, during which time they were "making love", and that as they drove up the hill, immediately preceding the wreck, he had his arm about the plaintiff and that they two were jointly engaged in very amorous conduct.

The questioned letter above mentioned was then offered in evidence, to admit which the former wife of plaintiff's husband was called as a witness. She undertook to identify the handwriting, but on cross-examination as much as conceded that she had never seen the plaintiff write and had only seen three or four letters purported to have been written by her. The Court was of the opinion that she was not qualified to identify the writing. Another letter, which the plaintiff had admitted writing, was then offered in evidence as a standard for comparison, and the disputed letter was offered on the theory that it could properly be compared by the jury with the admitted writing. This was refused. A reading of this letter makes it clearly competent if genuine. It contains statements in regard to the incident of December 3 which are clearly out of line with the plaintiff's story of her deportment and tend strongly to corroborate the version of the accident given by the defendant. The letter contains inherent evidence of its genuineness. It is written from Mullens, West Virginia, and bears date January 26. The plaintiff admits that she and her husband had moved to Mullens about this time. In the letter the plaintiff speaks of going to Beckley to the hospital on the following day. The testimony of the doctor in the case was that she was in the Beckley Hospital on that day. In the letter a minute description of the apartment in which the plaintiff and her husband lived is given, which exactly corresponds with a previous description which she had given in cross-examination. The letter alludes frivolously to some un-

fortunate happening on the evening of December 3. All these things make it appear highly probable that the plaintiff is the author of the questioned letter. The original of the letter which the plaintiff admits to have written and the questioned letter are before us. One is on a full sheet and the other on a half sheet of paper, which appear to be similar in character. The penmanship would clearly admit of being found to be identical.

By common law in England the jury or court was permitted to compare the writing of a disputed document with any other writing of the alleged author properly in the case, but not with an irrelevant or extraneous writing introduced solely for that purpose. This rule seems to have been followed by most American jurisdictions. It was adopted by this Court at an early date. *Clay* v. *Robinson,* 7 W. Va. 348; *State* v. *Henderson,* 29 W. Va. 147, 1 S. E. 225; *Tower* v. *Whip,* 53 W. Va. 158, 44 S. E. 179. A statutory modification of this rule came into our Code with the enactment of Chapter 39 of the Acts of the Legislature of the Regular Session of 1907, which reads thus:

> "That in any civil suit or proceeding at law or in equity, and in any criminal action or proceeding, any writing proved to the satisfaction of the judge to be genuine, may be used with or without the testimony of witnesses for the purpose of making a comparison with a disputed writing as evidence of the genuineness or otherwise of such disputed writing."

The purpose or effect of this statute was to permit the admission in evidence of an extraneous or irrelevant writing for use as a standard with which the jury or court might compare the disputed writing. This comparison was expressly authorized to be made either with or without the aid of the testimony of witnesses. But this Court held that only a genuine writing made in the ordinary course of business, by the person alleged to have written the paper in dispute, could be admitted under the statute in its then form. *First National Bank of Penns-*

*boro* v. *Barker*, 75 W. Va. 244, 83 S. E. 898. The Code of 1931 modified this statute to read as follows:

"In any civil suit or proceeding at law or in equity, and in any criminal action or proceeding, any writing proved to the satisfaction of the judge to be in the handwriting of the person who is alleged to have written it, and not written for purposes of comparison, except under the supervision of the judge, may be used with or without the testimony of witnesses for the purpose of making a comparison with a disputed writing as evidence of the genuineness or otherwise of such disputed writing." Code 57-2-1.

This amendment effected no change in the statute which is material here. A writing which the alleged author in his evidence admits to be in his handwriting becomes competent as a standard of comparison. Such unqualified admission must be accepted as proof "to the satisfaction of the judge" that the writing is genuine. *Painter* v. *Long*, 69 W. Va. 765, 72 S. E. 1092; *Nixon* v. *Shaver*, 115 W. Va. 469, 176 S. E. 849. The admittedly genuine writing and the one in dispute are then for the jury to compare. Testimony of witnesses who have made such comparison may also be admitted but is unnecessary. The statute so says and this Court has so held. *Poole* v. *Beller*, 104 W. Va. 547, 140 S. E. 534.

The Court could not have done otherwise than find that the letter which the plaintiff admitted writing was genuine. Therefore, its admission was mandatory, after which the disputed writing could be admitted "with or without the testimony of witnesses" for the purpose of its being compared by the jury with the genuine. We, therefore, consider it to have been error to refuse the admission of these letters in evidence.

Other errors are assigned, but, in view of the conclusion we have reached, they become unimportant.

Accordingly, the judgment of the trial court will be reversed, the verdict of the jury set aside and a new trial awarded.

*Reversed; verdict set aside; new trial awarded.*