MERRIMAN S. SMITH, JUDGE.
Mr. Cokeley, superintendent of the trout hatchery operated by the state conservation commission, at Petersburg, West Virginia, notified Hansel Ruddle, who was employed by the conservation commission as game protector for Pendleton county, in May, 1945, that he was sending a load of trout to distribute above Thorn Creek, near Franklin, Pendleton county, West Virginia. On the morning of May 24, 1945, Ruddle arrived at the court house at Franklin with a pick-up truckload of fish; he called Dr. Richard Boggs, a dentist in Franklin, who was president of the local sportsmen’s club and advised him of the arrival of the truck and he talked with Charles W. Neville, the claimant, on the street; consequently a number of the sportsmen’s club members gathered around the truck to look over the fish. Frank Sites, the driver of the truck, Ruddle and *33 Neville (the claimant) occupying the cab, and Jimmy Anderson and Stanley Spaulding, two high-school boys being in the rear with the tank of fish, the truck proceeded on its journey to distribute the fish. They were accompanied by Dr. Thacker and at least one other party in a private passenger car.
On the way out, in leaving the highway and crossing a field, Ruddle cautioned the driver, Frank Sites, not to drive too fast because the boys on the rear of the truck . . . would fall off or something.” (Record p. 19). After having stocked all their fish and emptied the tank, and upon their return while on u. s. route 220, about four miles from Franklin, the driver of the truck, in passing another oncoming truck, rounding the curve at a point known as Trout Rock Curve, lost control of the truck and went off the highway over the bank, upsetting the truck and injuring the claimant, Neville, who is seeking damages for his medical, hospital and incidental expenses thereto, and for loss of time from his work.
For the past several years various sportsmen’s clubs over the state have insisted that they accompany the game protectors when restocking the fish so as to be on hand when the fish are released, primarily for two reasons; first, that they might see that the fish are properly stocked, and second, to ascertain the location of the holes that the fish go in. It has grown to be a regular custom that these clubs be notified of the time and place of these stockings by the game protector, since they are conducted primarily for the benefit of the fishermen and public of this state. However, no specific order was entered on this particular distribution, according to the following testimony of Mr. B. D. Wills, supervisor of state fish hatcheries: “. .. . there .has never been any specific request by the commission to have them meet the trucks and go out. They take that on themselves, that if they want to go, why, they have gone in the past and they want to see how they are stocked.” (Record p. 37). Consequently, when these club members *34 go on these restocking tripa ihoy assume the risk.
In the very nature of automobile accidents each one is dependent upon the specific, incidents, circumstances and acts surrounding the particular accident. And in the instant case when driving through a rough held, Huddle cautioned the driver not to drive too fast on account of the boys in the rear of tin1 truck. If the claimant felt that the driver of the truck was a reckless driver he could easily have gotten out of the truck and could have ridden in the private car which was accompanying the (ruck and driven by J)r. Thacker. The evidence further shows, (record p. 4) that Neville testified: “So, there was one sharp curve that we come to and 1 made the remark to him and Mr. Huddle that if we got around this one we may save our necks and get to town alive, but we didn’t.” This was just before the accident occurred and about four miles from their destination. Again, if the claimant was so fearful of having an accident he could have had the truck stopped and gotten out. Before the accident the truck had made about ten stops and if the claimant was under any apprehension or fear that the driver of the truck was reckless, ample opportunity was afforded him to alight from the truck. By his own evidence the claimant assumed the risk by continuing his ride with the driver for, after having remonstrated with the driven-, he could have alighted from the truck at any one of the stops which it made during the process of distributing the fish. Young v. Wheby, 126 W. Va. 741. Speed is a relative element depending upon the kind and condition of the. roadbed, the topography of the terrain and the mechanical condition of the- machine; also the coordination of the driver.
The evidence in this case is conilici.ing as to the speed of the truck at the time of the accident. Ruddle testified that they were making from thirty to thirty-live miles pot-hour, while the claimant says they were going from (iffy to fifty-five, miles be fori' rounding' the curve at. Trout Rock, so upon passing the oncoming- truck Sites momentarily lost control of the wheel, and from the remarks of Neville, on *35 route, who apparently was a highly nervous passenger and by this time had played upon the driver’s nerves to the extent that he momentarily lost control and the truck headed over the embankment. In this manner the claimant contributed in no small way to the incoordination of the driver.
The stocking and restocking of the streams and game preserves by the conservation commission is done primarily for the benefit and pleasure of a particular small group of the citizens of the state and the state derives no particular benefit by having the beneficially interested members of a club inspect or assist in the distribution of the fish or game and there is no record of a general specific request by those in authority to have them meet the trucks or to accompani) them during the distribution.
Where a guest passenger who, with another passenger, protested to the driver regarding the speed of the truck, after having made several stops affording him ample occasion to alight from the truck, fails to avail himself of such opportunity, thereby assumes the risk, and an award will be denied.
Award denied and claim dismissed.