## LESS SCHILLER ET AL V. PAUL H. RICE.

No. A-3328. Decided February 20, 1952.
Rehearing overruled March 26, 1952.
(246 S. W., 2d Series, 607.)

*Burford, Ryburn, Hincks & Ford, Logan Ford* and *Clarence A. Guittard,* all of Dallas, for petitioners, Schiller et al.

The Court of Civil Appeals erred in holding that the subjective state of mind of defendant Rice at the time of the accident was a material fact issue, and the instruction of the trial court to the contrary was erroneous; also in its holding that the indavertent use of the word "adjuster" in a question that was not answered and which the jury was promptly instructed to disregard was sufficient to warrant an order of mistrial. Scott v. Gardner, 137 Texas 628, 156 S.W. 2d 513; Bowman v.

Puckett, 144 Texas 125, 188 S. W. 2d 571; Horton v. Benson, (Com. App.) 277 S. W. 1050; Levy v. Rogers, 75 S. W. 2d 304.

*Hart Willis* and *Curtis White,* both of Dallas, for respondent, Rice.

In response to petitioners' points, respondent cites Texas Company v. Betterton, 126 Texas 359, 88 S. W. 2d 1039; Kuntz v. Spence, Com. App. 67 S.W. 2d 254; Smerke v. Office Equipment Co., 138 Texas 236, 158 S.W. 2d 302; Chapin v. Putman Supply Co., 124 Texas 247, 76 S. W. 2d 469.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Based upon answers of the jury to certain of fifty-eight special issues, Mrs. Less Schiller and Miss Mozelle King, whose rights are largely governed by the provisions of Article 6701b, V.A.C.S., the guest statute, and its proper interpretation, each recovered judgment in the trial court of damages for personal injuries against Paul Rice. On appeal to the Court of Civil Appeals at Dallas Rice assigned sixty-six points of error, sixty-three of which were overruled by that Court, two of which were sustained and one of which was left undecided. Having concluded that the trial court erred in two rspects, the Court of Civil Appeals reversed the judgment of the trial court and remanded the case to that court for retrial. 241 S.W. 2d 330.

Both parties filed applications for writ of error. The application filed by Mrs. Schiller and Miss King contained three points of error, all directed at the action of the Court of Civil Appeals in sustaining Rice's two assignments in that court. Their application was granted on the first two points. Rice's application for writ of error contained thirty points of error, all directed at the action of the Court of Civil Appeals in overruling that number of his assignments before that court. Rice's application was granted because of the granting of the Schiller-King application.

The points of error on which the application of Mrs. Schiller and Miss King was granted are, in substance, that the Court of Civil Appeals erred (1) in holding the trial court's definition of "heedless and reckless disregard of the rights of others" to be erroneous, and (2) in holding that a mistrial should have been declared when plaintiff's counsel, in examining one of his clients as to the circumstances surrounding the signing of a certain written statement, inquired if the statement was written

by an "adjuster." In view of the fact that we have concluded that the Court of Civil Appeals should have reversed the judgment of the trial court and rendered judgment for the defendant on another ground, it becomes unnecessary for us to pass on the points of error in the Schiller-King application.

The record reflects that Mrs. Schiller (then Miss Helen Bryson) and Miss King were guests in defendant's automobile and were injured when the automobile ran over a street curb in the City of Dallas about 3 o'clock A.M. and collided with a lamp post and a tree.

One of the grounds on which the plaintiffs sought to impose liability on the defendant was that the defendant was driving his automobile on a public street in the City of Dallas while he was intoxicated and while he was under the influence of intoxicating liquor, in violation of Article 802 of the Penal Code, which act was alleged to be in heedless and reckless disregard of the rights of his passengers and was a proximate cause of the acts and omissions causing plaintiffs' injuries. Defendant entered a general denial, but alleged that if he was heedless and reckless in driving his automobile while intoxicated or while under the influence of intoxicating liquor, the plaintiffs knew of his condition and acted in heedless and reckless disregard of their own safety in failing to leave the automobile on several occasions when they had fair and reasonable opportunity to do so. Defendant also pleaded that the plaintiffs assumed whatever risk was involved in riding in defendant's car and that their conduct in remaining in and in failing to leave the car, knowing that defendant was intoxicated, amounted, in law, to an assent to the acts and omissions of the defendant, thereby barring a recovery under the doctrine expressed in the maxim "volenti non fit injuria," which means "that to which a person assents is not esteemed in law an injury," Wood v. Kane Boiler Works, 150 Texas 191, 238 S.W. 2d 172, or "He who consents cannot receive an injury." Black's Law Dictionary.

In answer to special issues submitting the foregoing theories of liability and of defense, the jury found that defendant drove his automobile on a public street in Dallas while under the influence of intoxicating liquor on the occasion in question, that such act was in heedless and reckless disregard of the rights of plaintiffs, and that such heedless and reckless disregard of the rights of plaintiffs was a proximate cause of their injuries; that plaintiffs knew and realized that defendant was intoxicated

or under the influence of intoxicating liquor; that they had a fair and reasonable opportunity to leave the car after they acquired such knowledge, but did not act with knowledge of the danger in riding with defendant and that their failure to leave the car was not in heedless and reckless disregard of their own safety. The jury also found that the plaintiffs impliedly assented to the manner in which defendant drove his car. Having answered that plaintiffs did not act in heedless and reckless disregard of their own safety in failing to leave the car, there was no occasion for the jury to consider the issue of proximate cause given in connection with that issue.

Defendant filed proper motions to ignore certain of the jury findings, to enter judgment on the verdict for defendant, and to enter judgment for the defendant non obstante veredicto, all of which motions were overruled. The substance of these motions is incorporated in points of error presented by the defendant to the Court of Civil Appeals and to this court, in which he contends, in effect, that a recovery by plaitiffs is barred because since they knew that the defendant was driving his car while intoxicated the law charges them with knowledge and realization of the danger in riding with him and the jury finding of absence of such knowledge is not binding and should be ignored; further, that knowing that the defendant was intoxicated, plaintiffs acted in heedless and reckless disregard of their own safety, as a matter of law, in failing to leave the car upon fair and reasonable opportunity being afforded, which failure, as a matter of law, was a proximate cause of their injuries, and that the jury's negative answer to the heedless and reckless issue in this connection and their failure to answer the proximate cause issue should be ignored. Respondent contends on the same reasoning that a recovery by plaintiffs is also barred, as a matter of law, by the doctrine of assumed risk or the kindred doctrine of volenti non fit injuria.

We have concluded that defendant's motion should have been granted and that the Court of Civil Appeals erred in not so holding.

1 At the outset we may accept the view urged by the plaintiffs and adopted by the Court of Civil Appeals that the defense of assumed risk is only applicable in Texas to contractual relationships like that of master and servant. This has been too long, too often, and too lately held by our courts to permit of re-examination at this time. Roscoe, S. & P. Ry. Co. v. Jackson,

Tex. Civ. App., 127 S.W. 872, no writ history; City of Weatherford Water, Light & Ice Co. v. Veit, Tex. Civ. App., 196 S.W. 986, writ dism.; San Antonio Water, Light & Power Co. v. Baugh, Tex. Civ. App., 270 S.W. 7701, writ dism.; Texas Pacific Coal & Oil Co. v. Grabner, Tex. Civ. App., 10 S.W. 2d 441, no writ history; West Texas Utilities Co v. Renner, Tex. Com. App., 53 S.W. 2d 451, holding approved; Wood v. Kane Boiler Works, 150 Texas 199, 238 S.W. 2d 172. It has been held specifically that the doctrine of assumed risk cannot be invoked to defeat a recovery by a plaintiff for injuries received in riding with a negligent driver of an automobile. Buick Automobile Co. v. Weaver, Tex. Civ. App., 163 S.W. 594, writ refused; Ford Moto Company v. Maddin, 124 Texas 131, 76 S.W. 2d 474. Even so, our courts have recognized that a recovery by a plaintiff may be barred by such doctrines as "voluntary exposure to risk," Houston Nat. Bank v. Adair, 146 Texas 387, 207 S.W. 2d 374, or that known as volenti non fit injuria, Levlon v. Dallas Ry. & Terminal Co., Tex. Civ. App., 117 S.W. 2d 876, writ ref., which doctrines, if distinguishable from the doctrine of assumed risk, are nevertheless closely akin thereto. Ignoring, then, the defense of assumed risk, as that defense is defined in this state in its technical sense, there is yet much to be considered in the defenses offered by defendant.

2   The distinction in this case between the defense that in failing to leave the automobile plaintiffs acted in heedless and reckless disregard of their own s afety as a matter of law, on the one hand, and the defense of volenti non fit injuria on the other, is more philisophical than real. In the first, it is assumed that the defendant has breached a duty of care owing to the plaintiffs but that the plaintiffs' own negligence has contributed to bring about their injuries and bars a recovery. The second is based upon the theory that the defendant owes no duty of care to plaintiffs who have consented to their injuries, Wood v. Kane Boiler Works, supra. But to sustain either or both defenses it was necessary that defendant show that the plaintiffs knew that the defendant was intoxicated and knew and realized the danger in continuing to ride with defendant, but, having fair and reasonable opportunity to leave, continued to ride with him anyway.

In support of his contention that a recovery is barred in this case defendant cites the following authorities. Archer v. Bourne, 222 Ky. 268, 300 S.W. 604; Young v. Wheby, 126 W. Va. 741, 30 S.E. 2d 6, 154 A.L.R. 919; Garrity v. Mangan, 232 Iowa

1188, 6 N.W. 2d 292; Saxton v. Rose, 201 Miss., 814, 29 So. 2d 646; Sparks v. Chitwood Motor Co., 192 Ark. 743, 94 S.W. 2d 359; Packard v. Quesnel, 112 Vt. 175 Atl. 2d 164; Spencer v. Boes, 305 Ky. 573, 205 S.W. 2d 150; Hemington v. Hemington, 221 Mich, 206, 190 N.W. 683; annotation in 154 A.L.R. 924; annotation in 15 A.L.R. 2d 1165. To these may be added the case of Taylor v. Taug, 17 Wash. 2d 533, 136 Pac. 2d 176, and a number of others.

As contrary to the contention of defendant, plaintiffs cite the following authorities; Lindemann v. San Joaquin Cotton Oil Co., 5 Cal. 2d 480; 55 Pac. 2d 870; Erickson v. Vogt, 27 Cal. App. 77, 80 Pac. 2d 533 McCance v. Montroy, 75 Cal. App. 186, 170 Pac. 2d 109; Mahin's Admr. v. McClellan, 279 Ky. 595, 131 S.W. 2d 478; Louisville Taxicab and Transfer Co. v. Barr, 307 Ky. 28, 209 S.W. 2d 719; Peters v. Hoisington, 72 S.D. 542, 37 N.W. 2d 410; Westergard v. Peterson, 117 Mont. 550, 159 Pac. 2d 518; Krause v. Hall, 195 Wis. 565, 217 N.W. 290; Gilmore v. Huntington Cab Co., 124 W. Va. 469, 21 S.E. 2d 137; Abel v. Salebra, 115 Vt. 336, 61 Atl. 2d 605; Davis v. Hollowell, 326 Mich. 673, 40 N.W. 2d 641, 15 A.L.R. 2d 1160; United Brotherhood of Carpenters, etc. v. Salter, 114 Colo, 513, 157 Pac. 2d 954; Powers v. State, 178 Md. 23, 11 Atl. 2d 909; Koepke v. Miller, 241 Wis. 501, 6 N.W. 2d 670.

The cases cited by plaintiffs tend to support the Counterpoint made by them in the Court of Civil Appeals, rather than that made in this court. In the Court of Civil Appeals they stated their Counterpoint in this language: "Contributory negligence and assumed risk are questions for jury *unless driver is obviously intoxicated*." (emphasis ours) In the case before us the jury found that defendant *was in fact intoxicated* and that plaintiffs knew it, which would seem to remove the questions of contributory negligence and assumed risk from the field of jury questions. In some of the cases cited by plaintiffs there is language suggesting that a recovery by a plaintiff guest against an intoxicated driver will not be barred on the ground of his contributory negligence or assumption of risk unless he knew the driver to be intoxicated to such an extent that it would offect his driving. In not a single one of the cited cases, however, was this question before the court,

In the Lindemann case the jury found the driver to be intoxicated but that the guest did not know it, and hence the court held on conflicting evidence that the driver was not entitled to judgment on the ground that the guest was contributorily negli-

gent as a matter of law in entering or failing to leave the automobile.

In the Erickson case the trial court instructed a verdict for the defendant host. The judgment was reversed because the appellate court held that while the evidence showed both parties to have been drinking, whether the defendant host was intoxicated and whether plaintiff guest knew it were jury questions.

In the McCance case it was held that where the drinking driver did not have the wheel of the automobile at the beginning of a ride but took over in a slum district it was a jury question as to whether women plaintiffs were contributorily negligent in not leaving the automobile at such a place.

In the McClelland case the trial judge instructed a verdict for the defendant host where the evidence tended to show that the host was intoxicated and that the deceased guest knew or should have known it when she entered the car. The judgment was reversed on the ground that the evidence was conflicting on the question of whether the deceased knew or should have known of the intoxicated condition of the driver. What the court said is illustrative of the confusion on the question found in a number of cases. The Court said: "The principal controversy before us involves the question as to whether or not Jessie Mahin knew that McClelland was drunk when she entered the car. *If she did, she assumed the risk* when she got into the car * * * *But whether a guest is contributorily negligent in riding with an intoxicated driver is usually a question for the jury as to whether the driver was so intoxicated as to affect his ability to operate the car,* and also as to whether the guest in the exercise of ordinary care had any cause to be apprehensive on that account for his own safety." (emphasis ours).

In the Barr case, where the evidence rather conclusively showed the driver to have been intoxicated, the trial court instructed a verdict for plaintiffs although the evidence also showed that they had been drinking heavily. The Kentucky Court of Appeals was inclined to think that the evidence showed the plaintiffs contributorily negligent as a matter of law but because the plaintiffs testified that they did not know the defendant was drunk, the court held that this issue should have gone to the jury.

In the Peters caes the defendant driver contended that the

plaintiff guest was contributorily negligent as a matter of law because he entered defendant's car knowing that defendant had been drinking. In overruling the contention, the Supreme Court of South Dakota said: "Contributory negligence in this case can only be predicated upon the fact that plaintiff knew or should have known that appellant was under the influence of intoxicating liquor * * *. It does not follow from evidence that a person has been drinking and thereafter drives his car that as a matter of law he was driving while under the influence of intoxicating liquor. *It is the knowledge of the passenger that intoxication exists that places him in the category of one who is deemed to take his chances of an accident and resulting injury.*"

In the Westergard case the trial court instructed a verdict for the defendant driver, which verdict he sought to uphold on the ground that he was intoxicated when the plaintiff entered his car and that the plaintiff knew it and therefore assumed the risk of injury. The Montana Supreme Court simply held that the evidence viewed most favorably to plaintiff made the question of assumption of risk one for the jury.

The parties in the Krause case had both been drinking and while on the way home from a dance the defendant driver was driving fast in spite of the protests of the plaintiff guest. An accident ensued in which plaintiff was injured. The court held that the woman plaintiff was not contributorily negligent as a matter of law in failing to leave the car on a dark highway at night.

The Supreme Court of Appeals of West Virginia upheld a jury verdict in plaintiff's favor in the Gilmore case on the ground that the evidence did not show conclusively that the defendant driver was intoxicated and that plaintiff knew it at the time plaintiff entered the car, although at the time of the wreck the defendant was undoubtedly drunk. Two dissenting judges thought the evidence showed plaintiff contributorily negligent as a matter of law.

In the Abel case the Supreme Court of Vermont held a plaintiff not to have been contributorily negligent as a matter of law or to have assumed the risk of injury as a matter of law in entering a car with a driver who had had two beers and one other drink. The court said: "A guest is not negligent in riding with an intoxicated driver, if he is unaware of the intoxication or does not notice any facts which would arouse the suspicions of a person of ordinary prudence."

In Davis v. Hollowell the Supreme Court of Michigan, in holding that a guest did not assume the risk of injury as a matter of law simply by entering an automobile of a driver who had been drinking, said: "While it is common knowledge that one who operates a motor vehicle after drinking liquor is more apt to be negligent than one who has not imbibed, it does not follow that wilful and wanton misconduct on his part is always foreseeable so that one who enters it will have recklessly subjected himself to the aggravated tortious conduct herein complained of."

In the United Brotherhood case, the court held it to be error that the trial court had refused to submit the plaintiff guest's contributory negligence to the jury where the evidence showed that the defendant driver had been drinking heavily and there was evidence that the plaintiff knew of the defendant's condition.

In the Koepke case the driver and his two guests had been drinking but the driver was apparently driving all right until he ran into a train. Plaintiff's part of the windshield was iced over so that he could not see. The jury found that the collision was a proximate result of defendant's failure to keep a proper lookout. The court said plaintiff assumed the risk of defendant's intoxication but that he did not assume the risk of the defendant's want of lookout.

The evidence in the Powers case showing that the driver and the guest had been drinking, the court held that the question of the guest's contributory negligence was a question for the jury, saying: "A guest is not negligent in riding with an intoxicated driver, if he is unaware of the intoxication or does not notice any facts which would arouse the suspicions of a person of ordinary prudence." Two judges dissented, holding that the evidence of drinking was such that the guest should have been held contributorily negligent as a matter of law.

From the foregoing review of the cases cited by plaintiffs it will be noted that *in not one single case did it appear as a matter of law or was it found by the jury that the defendant was driving while intoxicated, that the plaintiff knew and realized that the defendant was intoxicated, and, having fair and resonable opportunity to leave the vehicle, yet failed to do so.* In some of the cases the element of the driver's intoxication was disputed. In others the guest's knowledge of the driver's intoxicated condition was not shown as a matter of law nor concluded

by a jury finding. In still others, the guest, upon realizing the driver's condition, had no fair nor reasonable opportunity to leave the vehicle. All of these questions have been foreclosed against the plaintiffs in this case by the jury findings. Obviously, the cases cited by plaintiffs can have but little, if any, persuasive influence in the decision of this case.

We need not review in detail the cases cited by defendant. It may be safely and fairly asserted that they support the legal proposition that a plaintiff who voluntarily enters a vehicle with a driver known to the plaintiff to be intoxicated, or who, learning of the intoxicated condition of the driver after entering the vehicle, thereafter fails to leave it at the first fair and reasonable opportunity, will be denied a recovery. Some of the courts base the denial of a recovery on the contributory negligence of the guest, others on assumption of risk, and others on the volenti doctrine. But many of the courts say as did the Vermont court in the case of Packard v. Quesnel, supra: "We do not believe it important to classify this bar. The name to be applied to such conduct is of no great consequence. The result of the conduct is what counts and that result is preclusion from recovery."

**3** By Article 802 of the Penal Code the legislature has declared the public policy of this state. It has declared it to be a penal offense to drive an automobile while intoxicated, upon the public streets and highways, punishable by fine, or by imprisonment, or by both. By the very nature of that enactment the legislature has declared what every person of ordinary prudence and understanding knows: that it is dangerous for an intoxicated driver to operate a motor vehicle upon the streets and highways, dangerous not only to pedestrians and occupants of other vehicles but as well to those who ride with the intoxicated driver. One who voluntarily enters a motor vehicle to ride with a driver then known to be intoxicated, or, who, having entered without such knowledge, discovers the intoxicated condition of the driver and fails to leave if fair and reasonable opportunity to leave is afforded, cannot be heard to say that while he knew the driver to be intoxicated he did know the danger of entering or remaining in the vehicle. The law will charge him with knowledge of the danger. Not only so, but the law will charge him with acting in heedless and reckless disregard of his own safety, for no person, exercising even the slightest degree of care for his own safety, would voluntarily enter or voluntarily remain in a motor vehicle being driven by one known to him to be intoxicated. It has been said that "Intoxication temporarily destroys the faculties essen-

tial to safe driving, and this is of such common knowledge that no one with sense will submit to the peril of such a person." Hemington v. Hemington, supra; Taylor v. Taug, supra. Moreover, one so charged in law with knowledge of the danger, but who nevertheless voluntarily enters or remains in the vehicle, will be held to have voluntarily exposed himself to the risks involved or to have "put himself in the way of" the danger "of his own free will and as the result of an intelligent choice" so as to bar a recovery under the test of the volenti doctrine laid down in Wood v. Kane Boiler Works, supra. It follows as a matter of course, that it will be held as a matter of law also that entering or failing to leave the vehicle under the circumstances is a proximate cause of any injuries sustained by reason of the intoxication of the driver.

The plaintiffs here, with Miss Lynn Mullins, Frank Doyle, and Lee Doble, were all guests in defendant's automobile. All were engaged in a joint program of pleasure and entertainment. At about 6 o'clock p.m. defendant, Doyle, Doble and Miss Mullins had a drink at defendant's office. At about 7:45 o'clock the same four had a drink at defendant's residence. The plaintiffs then joined the party and defendant drove to a night club known as Pappy's Showland, arriving there at about 9:00 o'clock p.m. and remaining until about 1:00 o'clock a.m. While at the night club the parties ate and all indulged in drinking whiskey, plaintiff, Miss King, admitting to consuming not more than four drinks and plaintiff, Mrs. Schiller, testifying that she had three drinks, her escort, Doble, had five or six, and defendant, six or seven. From Pappy's Showland the parties went to the Variety Club in the Adolphus Hotel where drinks were served to everyone, defendant testifying, however, that he did not drink his. From the Variety Club, defendant drove his guests to his office. There is evidence that at the office Mrs. Schiller took a few sips of a drink that was fixed for her and that Miss Mullins fixed defendant a "double drink", though it is not contended that plaintiffs knew that defendant had consumed this "double drink." It was shortly after leaving the office that the accident occurred.

Doyle testified that while on the way to Pappy's defendant passed by the street where he should have turned, "so he pulled his car in reverse and slammed it backward without a lot of regard for anything"; that after leaving the night club and while on the way to the Adolphus, defendant drove into the wrong lane of traffic at a triple underpass, "and with a disregard of traffic he swung over into the one he wanted," whereupon the

witness told the defendant that "he was driving like a God damn fool"; that when they reached a point opposite the Adolphus the defendant "made a U turn and pulled over right directly in front of the Adolphus practically in front of the door, and parked."

Miss Mullins told defendant that if he kept doing things like that he "was going to get caught", but Rice laughed and said: "They haven't caught me yet." On the way from the Adolphus to the office, defendant drove "fast and with no regard for stop signs, caution signs or anything of that kind." With reference to the last stage of the journey, Doyle testified that when Doble came out of defendant's office, he, Doyle, told Doble to get in front and drive, which Doble sought to do but that defedant insisted that it was his car and he was going to drive it, whereupon the witness said: "Well, Lee, move over, but if he continues to drive the way he has been, throw his God damn keys out of the window and then he'll have to quit." Defendant replied: "Don't worry, I'll drive all right." Mrs. Schiller testified that she asked Doble in the presence of defendant to insist upon driving.

Mrs. Schiller testified that she had taxi fare and that there was no reason why she couldn't have called a taxi while at the Variety Club if she had wanted to leave the party, there being a taxi stand right in front of the Alolphus Hotel. She said however, that she was "having a good time and chose to stay with the party." She testified also that the office, their last stop before the accident, was "right in front of one of the largest residential hotels," she "had been there a year and a half, and" she "knew there were taxis right close to the office."

There is evidence that defendant did not know he had hit a tree until after the accident and did not know he had hit the lamp post until a policeman told him. Three policemen who saw defendant after the accident testified that he appeared to be intoxicated.

4. The evidence here detailed is clearly some evidence of probative force in support of the jury's findings that the defendant was driving while intoxicated, that the plaintiffs knew that the defendant was intoxicated, and, that after gaining such knowledge, they had fair and reasonable opportunity to leave the car.

In the light of the evidence and the findings of the jury it is our conclusion that the plaintiffs were heedless and reckless

of their own safety as a matter of law, and that, as a matter of law, this heedless and reckless disregard of their own safety was a proximate cause of their injuries. It is our further conclusion that the plaintiffs voluntarily exposed themselves to the risk of injury by failing to leave the automobile and "put themselves in the way of danger" of their own free will.

5 The trial court should have ignored the jury's answer to special issues 36 to the effect that the plaintiffs did not know the danger of riding with the defendant, as well as the answers to special issues 43 and 52 to the effect that the failure of the plaintiffs to leave the automobile was not in heedless and reckless disregard of their own safety, and should have rendered judg-judgment for the defendant. Issues 36, 43 and 52 were altogether surplusage in the light of the jury's finding that the plaintiffs knew of defendant's intoxicated condition and still failed to leave the car, and should have been so regarded and treated.

Thus far we have assumed that to bar a recovery the quality of plaintiffs' negligence must have been the same as that of the defendant, that is, that it must have been gross negligence. It was on this theory that this phase of the case was submitted to the jury. We are satisfied, however, that the result would be the same if plaintiffs' failure to leave the defendant's automobile were regarded as nothing more than ordinary contributory negligence.

6 This court has held that the quality of negligence necessary to support a recovery under the guest statute is the same as that necessary to support a recovery of exemplary damages under the "gross neglect" feature of sec. 26 of Art. 16 of the Constitution. Rowan v. Allen, 134 Texas 215, 134 S.W. 2d 1022; Bowman v. Puckett, 144 Texas 125, 188 S.W. 2d 571. This court has also held that ordinary contributory negligence is a defense to a suit for exemplary damages under the gross negligence provision of the Constitution. McDonald v. International & G. N. Ry. Co., 86 Texas 1, 22 S.W. 939; Fort Worth Elevators Co. v. Russell, 123 Texas 128, 70 S.W. 2d 397,408. It follows as a matter of course that ordinary contributory negligence is a defense to a suit based upon the heedless and the reckless disregard provision of the guest statute.

7 Moreover, to hold that ordinary contributory negligence was not a defense to a suit based upon the heedless and reckless disregard provision of the guest statute would be to subvert the

very purpose of the statute. It was the purpose of the statute to give added protection to the host-driver of an automobile and his insurer against suits by nonpaying guests. Before the enactment of the statute, ordinary contributory negligence was a defense to such suits. Murphy v. Milheiser, Tex. Civ. App., 30 S.W. 2d 586, writ refused. If it were now held that because of the statute it is no longer a defense the effect of the statute would be to take away from the host a very vital and valuable measure of protection he theretofore had. Such a holding would be wholly inconsistent with the spirit of the statute.

The judgment of the Court of Civil Appeals is affirmed insofar as it reverses the trial court's judgment for plaintiffs but judgment is here rendered that plaintiffs take nothing and that defendant recover all costs in all courts.

Opinion delivered February 20, 1952.

Associate Justice Wilson not sitting.

Rehearing overruled March 26, 1953.