

# The Attorney General of Texas

August 18, 1983

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Bob Glasgow
Chairman
Subcommittee on Criminal Matters
Texas State Senate
P. O. Box 12068, Capitol Station
Austin, Texas    78711

Opinion No. JM-68

Re:    Constitutionality    of
Senate Bill No. 1 relating to
per se definition of intoxica-
tion

Dear Senator Glasgow:

You have inquired about the constitutionality of the so-called per se intoxication rule contained in Senate Bill No. 1, the driving while intoxicated legislation recently enacted by the Sixty-eighth Legislature.    Sections 3 and 4 of that act, amending, respectively, articles 6701l-1 and 6701l-5, V.T.C.S., contain provisions defining "intoxicated" to include "having an alcohol concentration of 0.10 percent or more."  We find that these provisions, which replace a presumption of intoxication derived from a finding of 0.10 alcohol concentration with a per se definition based on such a determination, are not constitutionally objectionable.

You have directed our attention to People v. Alfaro, 192 Cal. Rptr. 178, 182 (Cal. Ct. App. 1983), which held a comparable California statute to be unconstitutional, declaring it to be "fatally vague in its notice provisions, and hence unenforceable."  However, in Burg v. Municipal Court, 192 Cal. Rptr. 531 (Cal. Ct. App. 1983), a coequal California judicial panel found that the same law "is not vague and is therefore constitutional, valid, and enforceable."  Both California courts agreed that the applicable standard is the one stated in Connally v. General Construction Company, 269 U.S. 385, 391 (1926):

> That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notations of fair play and the settled rules of law.  And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning

> and differ as to its application, violates the first essential of due process of law.

The _Alfaro_ court contended that the California per se intoxication statute

> gives notice only that a particular percentage of alcohol in the blood of a driver is illegal, without further explication, notwithstanding that the measured concentration of alcohol in the blood at any given time is plainly _not_ a matter of common understanding, as demonstrated by the fact that test results of clinically obtained specimens must be interpreted at trial by an expert witness.

_Alfaro_, _supra_, at 181. In its denial of rehearing, No. A019583 (Cal. Ct. App. - July 1, 1983) (not yet reported), the court concluded that

> Vehicle Code section 23152, subdivision (b) [the California intoxication statute], is constitutionally defective because it fails to provide citizen-motorists with reasonable means of ascertaining and avoiding the conduct proscribed by the statute.

On the other hand, in _Burg_, _supra_, at 533, the court held that the statute in question "conveys to the drinking driver a sufficiently definite warning of what conduct is proscribed." As the dissent in _Alfaro_ said:

> Vehicle Code section 23152, subdivision (b), manifestly warns the drinking driver that he must discontinue, or at least temper, his drinking after his initial imbibition, lest he reach the forbidden blood alcohol driving level, and face arrest and prosecution. Such a warning is sufficient by any constitutional standard known to me.

_Alfaro supra_, at 183 (Elkington, J., dissenting). Hence, the central issue you raise is clearly drawn in the contrary positions taken by these California courts. Before we further examine the constitutionality of the new Texas definition of intoxication, we will describe the status of the existing presumption of intoxication based on a test finding of .10 percent alcohol concentration in a driving while intoxicated defendant.

It is well established in Texas

> that the offense of "driving an automobile upon a public highway while intoxicated" consists of two elements; intoxication and driving upon a highway in such condition. <u>Snider v. State</u>, 165 S.W.2d 904 (Tex. Cr. App. 1942). A criminal or unlawful intent is not an essential element of the offense. <u>Joiner v. State</u>, 161 Tex. Cr. App. 526, 279 S.W.2d 333 (1955).

<u>Ex Parte Ross</u>, 522 S.W.2d 214, 217-218 (Tex. Cr. App. 1975). <u>See also</u> <u>Reed v. State</u>, 624 S.W.2d 708 (Tex. App. - Houston [14th Dist.] 1981, no pet). Further, the Texas Court of Criminal Appeals has held that

> [i]t is common knowledge that intoxication temporarily destroys faculties essential to safe driving, <u>Schiller v. Rice</u>, 151 Tex. 116, 246 S.W.2d 607 (1952), and we cannot in good conscience speculate that the Legislature failed to recognize that which human experience has shown. Examination of the definitions of "intoxication" contained in the new Penal Code shows that the Legislature recognized that intoxication impairs mental faculties.

<u>Ross</u>, <u>supra</u>, at 218-219. Moreover, with regard to the existing presumption of intoxication, it is settled that

> [s]uch a decision is legislative in nature and is foreclosed by the Legislature's judgment as reflected in article 67011-5.

<u>Slagle v. State</u>, 570 S.W.2d 916, 919 (Tex. Crim. App. 1978). "Whether a particular blood alcohol level should carry the weight of a presumption is a matter for the Legislature." <u>Turpin v. State</u>, 606 S.W.2d 907, 912 (Tex. Crim. App. 1980). Likewise, the Texas Court of Criminal Appeals has clearly stated the impact of such a presumption by noting "that the jury may accept or reject the presumption of fact even in the face of no contrary evidence." <u>Madrid v. State</u>, 595 S.W.2d 106, 110 (Tex. Crim. App. - 1979). Specifically in the context of a driving while intoxicated prosecution, that court has noted:

> A statutory presumption permits an inference to be drawn from proof of certain facts. In this instance the statute permits the jury to infer that a person is intoxicated if it is proved that there was 0.10 percent alcohol in his blood when he drove a motor vehicle on a public highway. The state is not relieved of the burden of proving each element of the offense beyond a reasonable

> doubt. In order to take advantage of the presumption the state must prove each fact giving rise to the presumption beyond a reasonable doubt.

Easdon v. State, 552 S.W.2d 153, 155 (Tex. Crim. App. 1977).

Your inquiry raises the issue of whether the conversion from a presumption of intoxication derived from .10 percent alcohol concentration to a per se definition of intoxication based on such a finding affects the validity of the regulatory scheme. In describing a virtually identical statutory change, one court has recently written:

> Under the prior DWI statute . . . the amount of alcohol in a person's blood created certain presumptions as to whether or not a person was under the influence of intoxicants. Under the present statutory scheme, however, the presumptions have been abolished. Instead, the statute sets out alternate methods of committing the crime of driving while under the influence. The statute does not presume, it defines. Thus, driving with a 0.1 percent BAC is one method of committing the crime of driving while under the influence. (Emphasis added).

State v. Franco, 639 P.2d 1320, 1323 (Wash. 1982). As in prior Texas cases regarding driving while intoxicated, courts in other states dealing with per se intoxication laws have noted that

> [i]t is well enough known to require no elaboration that driving while under the influence of liquor is so hazardous that it involves the public interest and welfare, and consequently, is a proper subject for regulation and control by law . . . .

Greaves v. State, 528 P.2d 805, 807 (Utah 1974). See also Roberts v. State, 329 So.2d 296, 297 (Fla. 1976). More specifically, one court has noted that

> there is an abundance of scientific support to indicate that with a BAC level of 0.1 percent, all persons are significantly affected. At that level, all persons will have lost one quarter of their normal driving ability, some persons will have lost as much as one half of their normal driving ability and a few people will not be able to even sit up in the driver's seat . . . . "the

> amount of alcoholic beverages necessary to produce
> a blood alcohol level of 0.1% is considerable and
> is believed by most people to represent abusive
> and excessive acute consumption of alcohol . . . .
> most people who drink alcoholic beverages will
> recognize that the consumption of more than 8 to 9
> "drinks" (that is, a half pint of whiskey, or one
> and one-half six packs of beer, or a quart of
> natural wine) in two or three hours will produce
> subjective effects and impaired physical
> performance. Yet, it is the consumption of
> approximately this amount of beverage that is
> required to produce a blood alcohol of 0.1% in the
> average adult."

Franco, supra, at 1322. Just as under existing Texas law, likewise it
has been held in another state that a per se prohibition

> represents a legislative determination that such
> quantity of alcohol has sufficient adverse effect
> upon any person to make his driving a definite
> hazard to himself and others. We cannot say that
> this determination is unfounded or contrary to the
> facts; a number of studies and many statistics
> have recently been published by experts in this
> field which support that conclusion.

Coxe v. State, 281 A.2d 606, 607 (Del. 1971). Moreover, just as in
the existing Texas DWI cases, other state courts considering per se
intoxication laws similar to Texas' new statute have held that there
are two elements to the offense -- the requisite alcohol concentration
and concurrent operation of a motor vehicle. Coxe, supra, at 607;
Greaves, supra, at 807-808.

In addition to the elemental similarities, courts have found that
the legislative determination that intoxication is definitively
established by a finding of .10 percent alcohol concentration does not
improperly alter the state's burden any more than the presumption did:

> The breath sample must be analyzed, the machine
> must be proved to be in proper working order
> beyond a reasonable doubt by the State, the
> officer who gives the test must be certified and
> must be proved to be competent at trial. The
> ampules must be proved beyond a reasonable doubt
> at trial to have been properly tested and the
> State always has the burden of proving beyond a
> reasonable doubt to the jury that the 0.1 percent
> reading was a correct one. The defense has the

> same opportunity to attack that reading as they always have had under the prior presumptions. The defense is entitled to an expert witness instruction . . . . Additional expert testimony, while available to the defendant, is not the only method of impeaching the reading on the breathalyzer. The State's expert testimony may be controverted by the defendant testifying about the number of drinks he consumed and the effects of the alcohol upon him, he may call lay witnesses to testify as to those same factors, he may argue that the machine must be in error because of the slight effect the alcohol had upon him. It is simply not the case that the giving of the breath sample proves the crime.

Franco, supra, at 1326-1327.

We conclude that the Alfaro decision, which went against the weight of existing authority throughout the nation, misapplied the vagueness test. As both the Burg court, at 533, and the Alfaro dissent, at 183, recognized:

> "[T]he Constitution does not require impossible standards"; and all that is required is that the language "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices . . . . That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense." (Citations omitted).

Roth v. United States, 354 U.S. 476, 491-492 (1957). Thus, we believe that Texas courts will confirm the analysis in the Alfaro dissent:

> With near universality it has been authoritatively declared that a drinking driver who has ingested so much alcohol, as to have developed a blood alcohol content of 0.10 percent, has, for the public's and his own safety, been rendered unfit for further driving . . . . By any test of reason and experience he has, and knows he has, imbibed a large quantity of alcohol before he reaches the proscribed 0.10 percent blood alcohol limit.
>
> . . . .

Under these criteria, a drinking driver is patently warned by the statute that his drinking must stop, before he has ingested the forbidden quantity.

Alfaro, supra, at 183 (Elkington, J., dissenting).

## S U M M A R Y

The per se definition of intoxication in Senate Bill No. 1 is constitutional.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Colin Carl
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Acting Chairman
Jon Bible
David Brooks
Colin Carl
Jim Moellinger
Nancy Sutton